UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------X
PETER BROWNSTEIN

                Plaintiff,          Case No. 3:10-cv-01581 (JAP)(TJB)

    -against-

TINA LINDSAY and ETHNIC
TECHNOLOGIES, LLC

                Defendants.
-----------------------------------------------------------X

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

                                      **KIRSCH GARTENBERG HOWARD** LLP
                                      *Attorneys for Defendants*
                                      Two University Plaza
                                      Hackensack, New Jersey 07601
                                      (201) 488-4644

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| **PRELIMINARY STATEMENT**........................................................................................ | | 1 |
| **STATEMENT OF FACTS**............................................................................................... | | 1 |
| ARGUMENT............................................................................................. | | 6 |
| I | BROWNSTEIN'S OWNERSHIP CLAIMS TO LINDSAY'S 1996 COPYRIGHTS ARE BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS............................................................. | 6 |
| II | BROWNSTEIN'S FOURTH COUNT SEEKING TO REPLEVY PROGRAMS HE AUTHORIZED PRIOR TO 2000 IS BARRED BY THE STATUTE OF LIMITATIONS............................................. | 9 |
| **CONCLUSION**.................................................................................................................. | | 10 |

TABLE OF AUTHORITIES

|  | Page |
|---|---|
| **Cases** | |
| *Benak ex rel Alliance Premier Growth Fund v. Alliance Capital Management L.P.*, 435 F. 3d 396, 400 (3d Cir. 2006)............................................................ | 7 |
| *Maggio v. Gerard Freezer & Ice. Co.* 824 F.2d 123, 129 (1st Cir. 1987)............. | 7, 8 |
| *Matthews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 252 (3d Cir. 2001)............... | 7 |
| *Merchant v. Levy*, 92 F. 3d 51, 56 (2d Cir. 1996)............................................. | 8 |
| *O'Keefe v. Snyder*, 83 N.J. 478, 498, 416 A.2d 862 (1980)............................... | 9 |
| *Robinson v. Johnson*, 312 F.3d 128, 135 (3d Cir. 2002)................................... | 7 |
| *William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009)....................... | 6, 7 |

**Rules and Statutes**

| | |
|---|---|
| 17 U.S.C. §507(b)............................................................................................ | 6 |
| F.R.C.P. 12(b)(6)............................................................................................. | 6, 8 |
| N.J.S. 2A:14-1................................................................................................. | 9 |

## PRELIMINARY STATEMENT

Plaintiff Peter Brownstein seeks a declaration that he is the co-author of an alleged joint work that was copyrighted by defendant Tina Lindsay in 1996. He claims that she infringed on his rights at the time by failing to identify him as a joint author.

However, the facts as alleged in the Complaint show that Brownstein was on inquiry notice, and that, through the exercise of reasonable due diligence, he should have discovered this alleged infringement at some point in 1997, at the latest. Consequently, that infringement claim, as well as his constructive trust and resulting trust claims that derive from the same alleged joint work, is barred by the three-year statute of limitations.

Brownstein's only other claim, as alleged in the Fourth Count of the Complaint, is for replevin of computer programs he allegedly authored prior to December 28, 2000 that are now in the possession of Ethnic Technologies, LLC. His Complaint, however, admits that the alleged "taking" occurred on December 28, 2000. Accordingly, this state law claim also is barred by the applicable statute of limitations.

## STATEMENT OF FACTS[1]

Between 1993 and 1996, defendant Tina Lindsay developed a process for identifying a person's probable ethnic characteristics based on a set of rules applied to the person's name and address. (Complaint at ¶10)[2] At that same time, plaintiff Peter Brownstein

---

[1] For purposes of defendants' motion to dismiss, all of the facts alleged in the Complaint are presumed to be true. See *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)

[2] At various points in his Complaint, plaintiff refers to the process developed by Lindsay as the "LCID" which, although not mentioned in the Complaint, is an acronym for the "Lindsay Cultural Identity Determinant". At other points, plaintiff refers to the "LCID and its derivative works" as the "TAP System" (Complaint ¶18), but then confusingly reverts to labeling the entire process as the "LCID, including his programs" (Complaint ¶28) or makes allegations about his ownership interest in "the LCID" without distinction as to programs or derivative works

allegedly wrote a set of computer programs to apply Lindsay's process to a names database; he describes what he did as "ethnic encoding". (Complaint ¶ 11)  As he described the event in an Affidavit dated August 8, 1997 previously filed in this Court[3]:

> "She showed me her specifications on how, exactly, the computer system had to be written to allow access to the researched and classified data. . . . The programs were simple to code . . . ."
> (See paragraphs 13-14 to Exhibit 1, Declaration of Thomas S. Howard dated May 27, 2010)

On February 12, 1996, the United States Copyright Office registered what Lindsay had developed as "An Ethnic Determinant System – Knowledge and Rule/Exception Basis", registration no. TXU730-872.  (Complaint ¶ 12)  A few months later, Brownstein and Lindsay formed TAP Systems, Inc. ("TAP") with each receiving 50% of the shares of the company.  (Complaint ¶ 13)  As Brownstein testified in his August 8, 1997 Affidavit:

> "Tina approached me about the idea of forming our own software company. . . . Tina told me that the ethnic system would be one of a group of software products we could build and sell. . . . I agreed. We formed TAP Systems in June 1996. . . ." (Paragraphs 27-29, Exh. 1 to Howard Declaration)

Six months later, on December 19, 1996, Lindsay allegedly registered a "second copyright" registration as the sole author.  (Complaint ¶14 and Exh. B to Complaint) Brownstein alleges that this material was a "joint work" (Complaint ¶16), and that this copyright registration improperly listed Lindsay as "the sole author of said derivative works, omitting Brownstein as the co-author." He alleges, however, that he had no knowledge of this alleged omission until

---

(Complaint ¶37) while he also asserts that each "program was identified as the property of TAP Systems" (Complaint ¶21).  For the sake of clarity, defendants refer herein to the process at issue, as alleged in the Complaint and including the alleged derivative works, as the "TAP System".

[3] In the lawsuit captioned *List Service Direct, Inc. v. Tina Lindsay and TAP Systems, Inc.*, Docket No. 97-3504.

- 2 -

February 2010 – and that he also had no knowledge that Lindsay licensed the copyrighted material to TAP in June 1997. (Complaint ¶¶15 and 23)

Brownstein admits, however, that:

- he formed TAP with Lindsay as a "software company" (Brownstein Affidavit, ¶28, Exh. 1 to Howard Dec.);
- he was a 50% owner and secretary/treasurer of TAP (Complaint ¶12);
- he and Lindsay were "fiduciaries to each other as owners of TAP" (Complaint ¶33);
- as part of a joint venture agreement between TAP and Consumers Marketing Research, Inc. ("CMR") dated September 26, 1997, "TAP licensed its intellectual property including LCID and its derivative works (now called the TAP System) to LLC" (Complaint ¶18);
- by agreement dated December 28, 2000, TAP and CMR formed Ethnic Technologies, LLC ("E-Tech") by which "TAP licensed its TAP System" to E-Tech (Complaint ¶20);
- he was a managing member of both the initial LLC and E-Tech as well as the Chief Information Officer of E-Tech (Complaint ¶¶2 and 18);
- he worked extensively with the TAP System at both TAP and E-Tech to "enhance" that system with additional computer programs used in the business of E-Tech (Complaint ¶¶2, 17, 19 and 21);
- the programs that he allegedly created were "identified as the property of TAP Systems" (Complaint ¶21)

The agreements to which Brownstein refers further elucidate the knowledge that Brownstein possessed at the time about the software business in which he was engaged, of which he was a 50% owner, and for which he was "Chief Information Officer". Each agreement expressly referred to the TAP System as TAP's contribution to the combination with CMR, describing the assets contributed by TAP as consisting of:

> "know-how and information coding [] incorporated into a system (hereinafter the "TAP SYSTEM"), in which the selection parameters and the corresponding ethnic and religious identification are embodied, can be supplied on magnetic tape, **and to which TAP owns all rights, including copyrights**". (emphasis supplied)

- 3 -

> (See 4th Whereas clauses, page 1 to Agreement dated September 26, 1997 annexed to the Howard Dec. as Exh. 2 and to Agreement dated December 28, 2000 annexed to the Howard Dec. as Exh. 3)[4]

The September 26, 2007 Agreement explained that the purpose of the combination was "so that a unified product may be further developed, marketed and distributed by the new corporation." (Howard Dec., Exh. 2, p. 1, 7th Whereas Clause)  To that end, the Agreement made clear that whatever TAP had, including the TAP System and the programs that made it accessible on a mainframe computer using magnetic tape which Brownstein now claims to own, were for use by the combined companies:

> "A. TAP will supply to the LLC the TAP SYSTEM on magnetic tape including tape layout and dump. TAP represents and warrants that it owns and has legal right to transfer the TAP SYSTEM to the LLC. . .
>
> "B. CMR recognizes that the TAP SYSTEM is protected under the copyright laws of the United States . . . .
>
> \* \* \*
>
> "A. CMR and TAP agree that the LLC will utilize a combined NAME & TAP SYSTEM (hereinafter "NEW SYSTEM") for purposes of encoding by ethnic , minority and religious group lists of names . . . ." (Howard Dec., Exh. 2, §§2 and 3)

The December 28, 2000 Agreement that created E-Tech further clarified that the TAP System, including the computer encoding that Brownstein now claims, had been the "exclusive property" of TAP. (6th Whereas Clause, p. 1, Exh. 3 to Howard Dec.) Pursuant to that Agreement, the TAP System, including the computer encoding, was irrevocably combined with CMR's Name System to create E-Tech, which would do all "development of enhancements and updates" to the combined system:

> "A. CMR and TAP agree that ET has created a combined NAME & TAP SYSTEM (hereinafter 'E-Tech') **for purposes of encoding** by

---

[4] As shown by the document, Brownstein's initials "PB" appear in three locations on the 2000 Operating Agreement showing his knowledge and acceptance of the Agreement's terms.

> ethnic, minority, language preference and religious group, lists of names. . . .
>
> B. CMR and TAP agree that they have ceased doing their own independent marketing of the NAME SYSTEM & the TAP SYSTEM and that ET will do all future marketing, invoicing and **development of enhancements and updates** to the E-Tech." (emphasis supplied) (Howard Dec., Exh. 3, p. 2, §1)

As section 3 of that Agreement further provided:

> "A. CMR and TAP have pooled their formerly separate and distinct physical, **computer and material assets** in a way in which they are now indistinguishable. Upon execution of this Agreement, all common assets will be vested to ET." (emphasis supplied) (Howard Dec., Exh. 3, p. 2, §3)

Brownstein admits that through these agreements, TAP "**licensed its intellectual property including LCID and its derivative works (now called TAP System)**" to LLC and, subsequently, E-Tech. (Complaint ¶¶18 and 20) He also admits that he continued to work with the TAP System after the LLC and E-Tech were formed, writing six programs to enhance the system in 1998 (Complaint ¶19) and later creating numerous computer programs to further enhance the TAP System a/k/a LCID. (Complaint ¶21) He further admits that his programs were "the property of TAP Systems". (Complaint ¶21)

To the extent that Brownstein claims that E-Tech refuses to turn-over "his" programs, he admits that all of those programs were "created prior to the execution of the 2000 agreement between TAP and CMR". (Complaint ¶46)

Although Brownstein refers at various points in his Complaint to copyrights that he registered (Complaint ¶¶17 and 19), impliedly suggesting that he did so long ago, that was not the case. He did not obtain these copyright registrations until December 23, 2009, a couple of

weeks before filing this lawsuit. Significantly, he is not claiming any infringement with a registered copyright.[5]

Since the filing of the Complaint, Brownstein and the defendants (as well as the other defendants in the state court litigation) settled the state court lawsuit to which he refers in paragraph 22 of his Complaint. Pursuant to the terms of that settlement, which has not yet been reduced to a formal agreement although the details were placed on the court's record on May 25, 2010, and which was agreed to be the settlement's effective date, defendants acquired the entirety of Brownstein's interest in TAP and in E-Tech. (Howard Dec., ¶5) Accordingly, to the extent that Brownstein's claims were brought "for the benefit of TAP" (Complaint, prayers for relief on the Second and Third Counts) or may be seen as properly belong to TAP, his right to assert such claims is now extinguished.

## ARGUMENT

### I

### BROWNSTEIN'S OWNERSHIP CLAIMS TO LINDSAY'S 1996 COPYRIGHTS ARE BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS

Since Brownstein's copyright claims, subject to a three-year statute of limitations under 17 U.S.C. §507(b), were not filed until March 22, 2010, Brownstein must hope to avail himself of the discovery rule to save his claims, which all arose before March 22, 2007.[6] See *William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009). However, that rule will not

---

[5] Defendants contend that these purported copyrights are invalid, improper, and without legal basis. Defendants expressly reserve the right to file appropriate legal proceedings to void them.

[6] The "Third Circuit Rule" permits a statute of limitations defense to be raised by motion under F.R.C.P. 12(b)(6), if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 312 F.3d 128, 135 (3d Cir. 2002).

permit Brownstein merely to claim he did not know that his claim existed, it requires a showing that he could not have discovered the alleged infringement through the exercise of due diligence. He cannot save himself by the discovery rule, where, as occurred here, he failed to acknowledge the numerous storm warnings that should have led him to investigate how his alleged intellectual property was being used or misused. See *Id.* at 438

The initial inquiry for this Court is whether Brownstein should have discovered the alleged infringement, i.e. Lindsay's failure to acknowledge his co-authorship, upon which he bases his claim. See *Graham, 568 F.3d at 438*. That inquiry requires this Court to determine whether Brownstein "had sufficient information of possible wrongdoing to place [him] on inquiry notice or to excite storm warnings of culpable activity." *Id*. Once that determination is made, and the Court finds the existence of storm warnings, the burden shifts to Brownstein to show that he exercised reasonable due diligence but nevertheless failed to discover his injury. *Id*.

As explained in the cases upon which the Third Circuit relied in deciding *Graham*, the finding of storm warnings requires an objective determination that looks to see whether a person of ordinary intelligence, would have recognized the information available to him as a storm warning. See *Matthews v. Kidder, Peabody & Co., Inc.* 260 F.3d 239, 252 (3d Cir. 2001); see also *Benak ex rel Alliance Premier Growth Fund v. Alliance Capital Management L.P.*, 435 F. 3d 396, 400 (3d Cir. 2006) Brownstein was required to use his common sense to determine whether the facts he was aware of warranted a further investigation. See *Maggio v. Gerard Freezer & Ice. Co*. 824 F.2d 123, 129 (1st Cir. 1987).

The facts alleged in the Complaint show a plentitude of commonsense storm warnings and/or events that put Brownstein on inquiry notice that no one viewed him as a co-

author and that TAP and E-Tech were using and transferring what he now claims to be his intellectual property. His incontrovertible actions and agreements show that if he truly had any claim to any intellectual property, he failed to exercise any due diligence to find out what was going on with his property or to make any commonsense inquiry. At best, he turned a blind eye.

Despite Brownstein's current allegations that he was unaware of the scope of Lindsay's copyright and unaware of the existence of Lindsay's license to TAP, the storm warnings over the course of 14 years demonstrate that had Brownstein exercised even the slightest diligence by inquiring what it was that he actually owned as a 50% owner of TAP, what it was that TAP had licensed to the LLC and later to E-Tech, and what it was that he had worked for 14 years to enhance, he would have discovered the license agreement and Lindsay's copyrights. Brownstein's utter failure to heed the abundance of facts known to him as early as 1997 can hardly qualify as due diligence. See *Maggio* 824 F.2d at 129.

Even more unbelievable is Brownstein's failure to make any inquiry in support of his claim of joint authorship of Lindsay's copyright, which he was aware of in 1997. As the Second Circuit has held, "a co-author knows that he or she jointly created a work, from the moment of its creation." *Merchant v. Levy*, 92 F. 3d 51, 56 (2d Cir. 1996). But, Brownstein incredibly claims that he could work with her, work with the programs and the system, authorize the transfers, act as Chief Information Officer, and own 25% of the company using the system – all without realizing the infringement or injury. Accordingly, Brownstein's claim seeking a declaration of joint-authorship of Lindsay's 1996 copyright and the update thereto are barred by the three year statute of limitations, entitling defendants to dismissal of the First, Second, and Third Counts of the Complaint as time-barred. Brownstein's has failed to state a claim upon which relief can be granted. See F.R.C.P. 12(b)(6).

## II

### BROWNSTEIN'S FOURTH COUNT SEEKING TO REPLEVY PROGRAMS HE AUTHORED PRIOR TO 2000 IS BARRED BY THE STATUTE OF LIMITATIONS

In Count Four, Brownstein seeks replevin from E-Tech of approximately 100 programs, all of which were created "prior to the execution of the 2000 agreement between TAP and CMR", which created E-Tech and which transferred these programs to E-Tech, as discussed in the statement of facts. Since the event occurred almost 10 years ago, Brownstein must again rely upon the discovery rule to save his time-barred claims from New Jersey's six year statute of limitations. See N.J.S. 2A:14-1.

But, even applying that rule, the facts alleged in the Complaint show that Brownstein's programs, which were expressly identified in the 1997 Agreement and in the 2000 Agreement, were all transferred to E-Tech by the December 28, 2000 Agreement, which expressly refers to all of the components of the TAP System, including copyrights, as transferred to E-Tech.[7]

Without question, Brownstein was put on inquiry notice by the 2000 Agreement, if not before, that his purported programs had been transferred to E-Tech (with his knowledge and consent). He was required, therefore, to exercise due diligence to investigate his ownership rights in the programs he alleges he owned. Brownstein failed to exercise such diligence, filing his claim almost 10 years after he should have discovered its existence. See *O'Keefe v. Snyder*, 83 N.J. 478, 498, 416 A.2d 862, 872 (1980)(a claim for replevin accrues on the date of the alleged taking). Accordingly, Brownstein's Fourth Count must be dismissed.

---

[7] Brownstein admits this transfer in his Complaint in paragraphs 18 and 20.

## CONCLUSION

The Complaint must be dismissed in its entirety for failure to state a claim upon which relief can be granted.

Dated: May 27, 2010

                                        KIRSCH GARTENBERG HOWARD LLP
                                        *Attorneys for Defendants*

                                        By: s/Thomas S. Howard

H:\4008.002 E-Tech (federal)\Pleadings\Motion to Dismiss\Brief.doc