**THE MCDANIEL LAW FIRM, P.C.**
54 Main Street
Hackensack, New Jersey 07601
201-845-3232
201-845-3777 (Facsimile)
*Attorneys for Plaintiff Peter Brownstein*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PETER BROWNSTEIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TINA LINDSAY and ETHNIC TECHNOLOGIES, LLC.,<br><br>　　　　　Defendants. | Civ. Action. No. 3:10-cv-01581 (JAP) (TJB)<br><br>STATEMENT OF UNDISPUTED FACTS |

Plaintiff **PETER BROWNSTEIN** hereby submits this Statement of Undisputed Facts in support of his Motion for Partial Summary Judgment.

**Early Development of the Ethnic System**

1.　During the 1980s, Peter Brownstein ("Brownstein") and Tina Lindsay ("Lindsay") worked for Consumers Marketing Research, Inc. ("CMR"), a company engaged in creating an ethnic identification system. (Ex. C, Affidavit of Tina Lindsay, August 10, 1997, p. 2.)[1]

2.　After both Brownstein and Lindsay left CMR, Brownstein joined Future Prospective Clients, Inc. ("FPCI"), a breakaway company from CMR that sold mailing list data. (Id.)

---

[1] All citations in this memorandum are exhibits appended to the Declaration of Jay R. McDaniel, Esq., dated June 24, 2011.

1

3. Brownstein helped Lindsay obtain employment at FPCI in 1991 on a part-time basis. (Ex. C., Lindsay Aff., p. 2.)

4. At that point, Lindsay was unaware of how to operate a computer and depended on Brownstein to carefully instruct her on computer operations. (Id.)

5. In late 1992, FPCI hired Lindsay full-time as a computer operator. (Id. at 3.)

6. In the fall of 1993, Lindsay conceived of a variation for encoding name and address lists with ethnic information. (Id. at pp. 3-4.)

7. Lindsay recognized that the system that she had been exposed to as an employee of CMR, which depended solely on last names, was limited. (Id.)

8. She began to experiment with a system that focused on first names and the geographic location of a person as a more accurate manner of inferring ethnic information. (Id. at p. 4.)

9. Lindsay began to develop a system of ethnic rules in or about December 1993. (Id.)

10. By January 1994, Lindsay realized that she could use a computer system to process these rules and approached Brownstein with her ideas for a more advanced ethnic determination software system. (Id. at pp. 4-5.)

11. Brownstein wrote a series of computer programs (then designated with the "Ethno" prefix) to process the rules that Lindsay had developed and arranged. (Ex. B, Deposition Transcript of Peter Brownstein, June 2, 2011, 19:3-20:3; Ex. A, Deposition Transcript of Tina Lindsay, June 1, 2011, 18:6-19:21.)

12. In or about February 1994, Brownstein and Lindsay separately approached upper management at FPCI regarding their project. (Ex. C, Lindsay Aff., p. 5.)

13. FPCI rejected the idea. (Ex. C, Lindsay Aff., p. 5.)

14. FPCI's management did, however, allow Lindsay to use FPCI's computers during down-time and off-hours. (Id.)

15. Throughout 1994, Lindsay continued to research and develop more ethnic rules, while Brownstein wrote the computer programs necessary to apply the system to name and address files (which could run into the millions of entries). (Ex. C, Lindsay Aff., p. 5-7; Ex. D, Affidavit of Peter Brownstein, August 8, 1997, p. 4.)

16. The ethnic system was a "whole system design concept," in which the data and the programs were both integral parts to the system. (Ex. B, Brownstein Dep., 10:13-11:5.)

17. Lindsay, likewise, described the computer software and computer programs as inextricably related. (Ex. C, Lindsay Aff., ex. C, p. 1, ex. G, Schedule A.)

**Brownstein and Lindsay Fix the Ethnic Determination System in Tangible Form in 1994**

18. By late 1994, the Ethnic Determination System that Brownstein and Lindsay developed was in fixed form – the two began running tests on the system to determine accuracy and encoding rates at this time. (Id. at p.6-7.)

19. In fact, part of Lindsay's initial copyright registration includes instructions on how to create a master ethnic encoding software system, which is dated October 1994. (Ex. F, "Ethnic System - System Design for Encoding a Residential Database or Business Database with Contact Manes," as contained in the deposit copy associated with Certificate of Copyright Registration TXu-730-872, October, 1994, p. 1.)

20. In August 1995, Loretta Poggio ("Poggio") joined FPCI as a salesperson for the company's products and the Ethnic Determination System was presented for her review. (Ex. C, Lindsay Aff., p. 12.)

21. Later that same year, Poggio began trying to solicit sales of ethnically encoded mailing lists for FPCI orders using the Ethnic Determination System that Brownstein and Lindsay created. (Ex. C, Lindsay Aff., 13-14.)

22. Although eventually unable to close the deal, Poggio was able in March 1996 to interest Axciom Computer, Inc., a large data corporation, in a site-license contract for the Ethnic Determination System. (Id. at p. 15.)

23. Between this time and May 1996, test runs of the system were being performed for Axciom using the complete work of the ethnic rules and software. (Id.)

24. Poggio also developed a relationship for a contract with Harte Hanks in May 1996. (Id. at p. 17.)

**Lindsay Applies for the First Copyright Registration**

25. In December 1995, after much turmoil regarding the Ethnic Determination System between Lindsay and the management of FPCI, Lindsay compiled print-outs of the system and submitted it for registration at the United States Copyright Office. (Id. at p. 15.)

26. Also about this time, FPCI reincorporated as List Service Direct, Inc. ("LSDI"). (Id. at p. 16.)

27. She mailed the application in January 1996 and the Copyright Office registered the work as of February 12, 1996. (Id. at p. 15.)

28. The February 12, 1996 Copyright Certificate of Registration bears number TXu-730-872 ("872 registration"). (Ex. E., Certificate of Copyright Registration TXu-730-872, February 12, 1996.)

29. The title of this work is "An Ethnic Determination System – Knowledge and Rule/Exception Basis." (Id.)

4

30. Lindsay lists herself as the sole author of this work and stated that the creation of the work was completed in 1996. (Ex. E, Certificate of Copyright Registration.)

31. She further specifies that the contribution to the work is not a "work made for hire." (Id.)

32. The deposit copy associated with the 872 registration contains a list of codes associated with ethnic groups and an extensive list of ethnic names data. (Ex. A, Lindsay Dep., 13:3-14:6.)

33. The deposit copy also contains basic instructions on how to create a master list of the ethnic information, dated October 1994. (Id. at 12:9-13-2.)

34. Lindsay did not include the computer programs that Brownstein developed to convert her ethnic rules into a working system. (Ex. E, Certificate of Copyright Registration.)

35. Brownstein and Lindsay agreed that Lindsay would file the first copyright registration in her own name because their employer was unaware that Brownstein had written the computer programs that permitted application of Lindsay's rules to a large database of names and addresses. (Ex. B, Brownstein Dep., 15:2-16; 35:4-37:17.)

36. Accordingly, Lindsay included in her registration deposit copy only the portion of the work that she had personally created and claimed status as sole author. (Ex. E, Certificate of Copyright Registration.)

**Brownstein and Lindsay Incorporate a Business**

37. On June 18, 1996, Lindsay and Brownstein jointly incorporated TAP Systems, Inc. ("TAP"). (Ex. H, TAP Systems, Inc. Corporate Records, June 18, 1996.)

38. Lindsay and Brownstein were each 50% shareholders and the directors of TAP. (Id.)

39. Lindsay was named as President and Vice President of TAP while Brownstein was named as Secretary and Treasurer.  (Ex. H, TAP Systems, Inc. Corporate Records.)

40. Lindsay and Brownstein also passed TAP's bylaws on the same date.  (Id.)

41. TAP had no other shareholder, directors, or officers besides Lindsay and Brownstein.  (Id.)

42. At no time were Lindsay or Brownstein ever paid as employees of TAP.  (Ex. A, Lindsay Dep., 52:11-54:17.)

43. In fact, from TAP's incorporation through the year 2000, TAP never paid any wages or salaries to any person.  (Id.)

**Lindsay Applies for the Second Copyright Registration**

44. Lindsay secured a second Copyright Certificate of Registration, dated December 10, 1996, bearing number TXu-778-127 ("127 registration").  (Ex. G, Certificate of Copyright Registration TXu-778-127, December 10, 1996.)

45. The title of this work is also "An Ethnic Determination System – Knowledge and Rule/Exception Basis."  (Id.)

46. Lindsay again lists herself as the sole author of this work and that the creation of the work was completed in 1996.  (Id.)

47. She again specifies that the contribution to the work is not a "work made for hire."  (Id.)

48. Lindsay states that this work is a derivative work based on the 872 registration and that additional ethnic categories, rules, names, and codes have been added.  (Id.)

49. The 127 registration makes explicit reference to a "computer system process" in the "Nature of Authorship" description and "description of computer process included" in the "Derivative Work" description. (Ex. G, Certificate of Copyright Registration.)

50. The deposit copy of the 127 registration additionally contains the software programs and job control language, which instructs a computer operating system on how to run the programs necessary to run the Ethnic Determination System, previously written by Brownstein. (Ex. A, Lindsay Dep., 18:6-12.)

51. In addition, unlike what she had done with the first application, Lindsay failed to give a copy of the Certificate of Registration to Brownstein, who had printed the materials from the computer system – including the computer programs – and who had no reason to believe that Lindsay would claim his work as her own. (Ex. B, Brownstein Dep., 65:10-68:9.)

52. Lindsay states that the "[i]ntelligence is in the data, not the [computer] program. The program just follows the rules." (Ex. A, Lindsay Dep., 23:18-19.)

53. Lindsay also justified her failure to include Brownstein on the basis that the ethnic system does not necessarily need a computer in order to work and the programs merely provide speed for the user, instead of manually coding the names. (Id. at 24:5-13.)

54. She further contended that the intellectual property contained in her copyright is "the process and all the research" and that the programs just "happened to be written … in one of hundreds of computer languages which could be used to implement the intellectual property." (Id. at 51:15-21.)

55. Lindsay further stated that the 872 registration was the "real" registration and the 127 registration was simply derivative, which did not require that she list Brownstein as an author. (Id. at 55:21-56:10.)

7

56. Brownstein did not know that Lindsay failed to list him as a joint author or that she did not believe that he held any rights in the work. (Ex. B, Brownstein Dep., 66:20-68:9.)

57. From the time TAP was formed until Brownstein withdrew in 2010 in settlement of an oppressed shareholder lawsuit, Brownstein received the same income from the work. (Ex. A, Lindsay Dep., 56:15-17.)

58. Lindsay sought to minimize Brownstein's contributions to the Ethnic Determination System during subsequent litigation with LSDI, and discussed this fact with Brownstein, but explained to Brownstein that this was to protect him from the lawsuit. (Ex. B, Brownstein Dep., 15:22-16:3.)

59. Brownstein's lawyer in this litigation also failed to counsel him regarding the copyrights. (Id. at 99:16-101:10.)

60. Brownstein never felt the need to question his status at TAP or in terms of the copyrights because of his consistent treatment as an equal partner and owner by Lindsay and trust in her. (Id. at 41:24-42:15.)

**Brownstein and Lindsay Devote all Efforts to TAP and the Ethnic Determination System**

61. Lindsay resigned from LSDI on June 18, 1997 and Brownstein resigned on June 24, 1997. (Ex. C, Lindsay Aff., p. 25; Ex. D, Brownstein Aff., August 8, 1997, p. 13.)

62. While TAP was incorporated a year earlier, TAP did not have operations until after the time that Lindsay and Brownstein left LSDI. (Ex. C, Lindsay Aff., at p. 17)

63. On June 1, 1997, Lindsay alone executed an exclusive license of the Ethnic Determination System to TAP. (Id. at ex. G.)

64. In this license agreement, which was never shown to Brownstein, Lindsay again identified herself as the sole copyright holder. (Ex. C, Lindsay Aff., at ex. G.)

65. Lindsay describes the Ethnic Determination System as "a set of both computer programs and data files" and includes "a series of computer programs that analyze individual names utilizing the system data." (Id. at Schedule A.)

66. She further states that the computer programs and the system data are "irrevocably intertwined." (Id. at Schedule A.)

67. Brownstein was unaware of its existence of the written assignment until late 2009. (Ex. B, Brownstein Dep., 68:12-15)

**TAP and CMR Form an LLC**

68. To further its efforts, TAP entered into a Joint Venture Agreement with CMR on September 26, 1997. (Ex. I, Joint Venture Agreement, September 26, 1997.)

69. This Joint Venture Agreement is the preliminary agreement that formed E-Tech, LLC, with TAP and CMR as its two members. (Id. at p. 1.)

70. As part of this agreement, TAP agreed to provide the Ethnic Determination System (entitled the "TAP System" in this document) along with CMR's ethnic system to form a new combined system. (Id. at 2.A.)

71. This agreement further provided that Ginger Nelson ("Nelson"), owner of CMR, would serve as the President and CEO, Lindsay as the Executive Vice President, CFO and Treasurer, and Brownstein as Production and Development Director and CIO (Chief Information Officer). (Id. at 5.D.)

72. Lindsay executed this agreement on behalf of TAP. (Id.)

73. On December 28, 2000, TAP and CMR executed a second Operating Agreement for E-Tech. (Ex. J, Ethnic Technologies, LLC Operating Agreement, December 28, 2000.)

74. Nelson, Lindsay, and Brownstein continued in their same roles as outlined in the Joint Venture Agreement. (Id.)

75. Brownstein and Lindsay continued to work on the Ethnic Determination System, with Brownstein developing derivative works personally and also supervising the creation of other derivative works in other computer programming languages based on the original program he created in 1994. (Ex. B, Brownstein Dep., 110:5-112:22.)

**Brownstein Leaves E-Tech**

76. Brownstein continued to own TAP and to work as a manager at E-Tech until May 2009. (Ex. K, Settlement Agreement, May 25, 2010.)

77. Brownstein sued under the Oppressed Shareholder statute, among other causes of action, in the Superior Court of New Jersey, Bergen County, Chancery Division, in the matter of Brownstein v. Lindsay, et al., Docket No. BER-C-150-09 ("State Action"). (Id.)

78. This case settled in June 2010, but the parties specifically carved out from the settlement agreement the dispute over the intellectual property right claims subject to the within lawsuit were not included. (Id.)

**Lindsay Repudiates Brownstein's Ownership**

79. On February 22 and 23, 2010, Lindsay testified in her deposition that she included Brownstein's computer programs in the 127 registration. (Ex. L, Deposition of Tina Lindsay, February 22-23, 2010, 21:21-22:4.)

80. Lindsay further testified that she failed to include Brownstein as a joint author in the registration application. (Id. at 23:9-12.)

81. Through his counsel, Brownstein thereafter demanded that Lindsay amend the 127 registration to list him as a joint author. (Ex. M, Letter Correspondence from Jay R. McDaniel, Esq. to Thomas S. Howard, Esq., March 5, 2010.)

82. Lindsay, through counsel, expressly repudiated Brownstein's ownership in the Ethnic Determination System by letter dated March 9, 2010. (Ex. N, Letter Correspondence from Thomas S. Howard, Esq. to Jay R. McDaniel, Esq., dated March 9, 2010.)

DATED: June 24, 2011								THE MCDANIEL LAW FIRM, P.C.

By: *[signature: Jay McDaniel]*

Jay R. McDaniel, Esq.
*Attorneys for Plaintiff Peter Brownstein*