RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAN 2 5 2012

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

-----------------------------------------------------------X

PETER BROWNSTEIN,

                        Plaintiff,          Docket No. 3:10-cv-01581 (JAP)(TJB)

        -against-

TINA LINDSAY and ETHNIC            HON. JOEL A. PISANO
TECHNOLOGIES, LLC,
                                   PRETRIAL ORDER

                        Defendants.
-----------------------------------------------------------X

        This matter having come before the Court for a pretrial conference pursuant to Fed. R. Civ.
P. 16;  Jay R. McDaniel having appeared for plaintiff Jesse C. Klaproth, Esq. having appeared for
defendant(s); the following Final Pretrial Order is hereby entered:

1.      **JURISDICTION** (set forth specifically)

        Jurisdiction resides in this Court based upon a federal question.  Plaintiff's claim of joint
        authorship of defendant Tina Lindsay's copyrighted work falls under the Copyright Act,
        17 U.S.C. §101 et seq., which provides that all cases involving copyrights come under
        exclusive jurisdiction of the federal courts. This case presents an actual case or controversy
        in that Brownstein claims that he is co-author of the work at issue in the litigation and
        entitled to receive a reasonable royalty. Defendants deny that Brownstein is a co-author of
        the work and dispute any obligation to account to Brownstein as co-author.  This Court has
        supplemental jurisdiction over the claims of Constructive Trust, Resulting Trust, and
        Replevin arising under state law pursuant to 28 U.S.C. § 1367 as they are so related to
        claims in the action within the original jurisdiction of this Court that they form part of the
        same case or controversy.

2.      **PENDING/CONTEMPLATED MOTIONS**   (Set forth all pending or contemplated
        motions, whether dispositive or addressed to discovery or the calendar.  Also set forth the
        nature of the motion and the return date.  If the Court indicated that it would rule on any
        matter at pretrial, summarize that matter and each party's position.)

        A.      Plaintiff:

                **Pending Motions:**

                **None**

**Contemplated Motions:**

a.      Motion in Limine to exclude defendant from offering the Settlement Agreement and Release executed by the parties in Brownstein v. Lindsay, et al., BER-C-150-09; BER-C-209-09. The Court should instruct the jury as to the existence of the Agreement and the fact that no inferences are to be drawn from the contents of the agreement. *TRIAL BRIEF*

b.      Motion for Sanctions for spoliation of evidence for destruction of certain floppy disks on which were stored material evidence. *RESERVED FOR DAMAGES TRIAL*

c.      Motion in limine to bar the testimony of the following witnesses: John Hosfeld, Allan Lawrence, Joanne Nicholson and David Reinken. *MOOT - PRE-CLUDED*

d.      Motion in limine to bar expert or opinion testimony regarding the alleged lack of "originality" in the work or the alleged lack of "similarity" to the existing programs used by Ethnic Technologies. *TRIAL BRIEF*

B.      Defendant

**Pending Motions:**

None

**Contemplated Motions:**

1)   Motion *in limine* to preclude plaintiff from calling Ginger Nelson to testify regarding irrelevant and redundant matters, not in dispute in this litigation. *MOOT PRECLUDED IN CASE IN CHIEF REBUTTAL ONLY*

2)   Motion *in limine* to preclude plaintiff from offering the deposition transcripts of Tina Lindsay in toto as evidence. *MOOT*

3)   Motion *in limine* to preclude plaintiff from offering exhibits 1-3, 5-7, and 10-12 for the reasons set forth in defendants' objections *supra*. *AT TRIAL*

4)   Motion *in limine* to preclude plaintiff from offering any opinions as to the originality of the computer programs at issue in this litigation. *TRIAL BRIEF*

3.      **STIPULATION OF FACTS** (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties).

1.      During the 1980s, Peter Brownstein ("Brownstein") and Tina Lindsay ("Lindsay") were employed by Consumers Marketing Research, Inc. ("CMR").

2.      CMR was at that time a direct mail services company that had developed a system for identifying the ethnicity of persons on a name and address list based on the last names of the people on the list.

3.      Brownstein was thereafter employed by Future Prospective Clients, Inc. ("FPCI.") FPCI also provided mailing list services, including for a brief time the encoding of name and address lists by ethnicity using last names.

4.      Lindsay developed a system based principally on first names, last names, parts of names and geographic location, as a manner of predicting ethnic information.

4.      **PLAINTIFF'S CONTESTED FACTS**  (Stated separately for each defendant. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

A.      Plaintiff intends to prove the following contested facts with regard to liability:

**Relevant Background**

1.      Brownstein helped Lindsay obtain employment at FPCI in 1991. Brownstein and Lindsay were both employed by FPCI through late June 1997.

2.      In the fall of 1993, Lindsay conceived of a new approach for encoding name and address lists with ethnic information. Instead of relying on last names, Lindsay conceived of a system in which the ethnicity of a person on a name and address

would be inferred primarily from the first name and the ethnic characteristics of the neighborhood in which the person lived.

**Brownstein and Lindsay Fixed the Ethnic Determination System in Tangible Form in 1994**

3.      In late 1994, the Ethnic Determination System was fixed in tangible form.  The work, as so fixed, included the following components:

  a.      A system of rules for ethnic identification based on first names, geographic location, last name prefixes and suffixes;

  b.      A series of steps in which the ethnic rule were to be applied;

  c.      A series of computer programs to allow the application of the ethnic rules to a name and address list, and the protocol for processing the names by computer known as "Job Control Language" (JCL).

4.      Brownstein and Lindsay began to test the system to determine accuracy and encoding rates in late 1994.  Testing of the Ethnic Determination System, using a one million name list continued during 1995.

5.      In August 1995, Loretta Poggio, a sales person at FPCI began trying to solicit sales of ethnically encoded mailing lists for FPCI orders using the Ethnic Determination System.

6.      Between March 1996 and May 1996, tests were performed of the Ethnic System for Axciom Computer, Inc., a large data corporation, in an attempt to secure a site-license contract.  A contract for the Ethnic System was secured with a customer, Harte Hanks, in May 1996.

**Lindsay Applies for the First Copyright Registration**

7.     In January 1996, Lindsay submitted for registration with the United States Copyright Office a copy of a work entitled "An Ethnic Determination System – Knowledge and Rule/Exception Basis."   The work was comprised of the ethnic rules portion of the work fixed by Brwonstein and Lindsday in 1994.  It consisted of a table of the Ethnic rules, a schedule of codes and a procedure for processing the rules. The application, on which Lindsay was listed as the sole author, states that the work was not a "work for hire."

8.     Brownstein was aware of the registration and of its contents. Brownstein and Lindsay had agreed that the registration would be comprised only of the portion of the work authored by Lindsay.   By agreement between Lindsay and Brownstein, Lindsay was to register only that portion of the work that she had personally authored.

9.     On February 12, 1996, the U.S. Copyright Office issued Copyright Certificate of Registration number TXu-730-872 ("872 registration") covering the materials submitted by Lindsay.

10.     Lindsay provided Brownstein with a copy of the Certificate of Registration.  She did not provide him with a copy of the materials deposited with the Copyright Office.

11.     In or about January 1996, List Services Direct, Inc. ("LSDI") was organized and began to conduct the business of FPCI.

**Brownstein and Lindsay Incorporate a Business**

12.     On June 17, 1996, Lindsay and Brownstein jointly incorporated TAP Systems, Inc. ("TAP"). The purpose of TAP was exploit the work fixed in tangible form by Lindsay and Brownstein in 1994. In addition, Lindsay was named as President and Vice President of TAP while Brownstein was named as Secretary and Treasurer.

13.     Lindsay and Brownstein were each 50% shareholders and also directors of TAP. Beginning in June 1997 through May 2010, Lindsay and Brownstein jointly operated TAP.

14.     In addition, Lindsay was named as President and Vice President of TAP while Brownstein was named as Secretary and Treasurer.

15.     Lindsay and Brownstein also adopted TAP's bylaws on the same date.

16.     TAP had no other shareholders, directors or officers besides Lindsay and Brownstein.

17.     At no time were Lindsay or Brownstein ever paid as employees of TAP.

**Lindsay Applies for the Second Copyright Registration**

18.     Lindsay filed a second Copyright Certificate of Registration, dated December 10, 1996, bearing number TXu-778-127 ("127 registration"). The title of this work was also "An Ethnic Determination System – Knowledge and Rule/Exception Basis."

19.     Lindsay again listed herself as the sole author of this work and stated that the creation of the work had been completed in 1996. She also specified that the work is not a "work made for hire."

20.   Lindsay stated that this work was a derivative work based on the 872 registration and that additional ethnic categories, rules, names, and codes had been added.   The 127 registration made explicit reference to a "computer system process" in the "Nature of Authorship" description and "description of computer process included" in the "Derivative Work" description.

21.   The deposit copy of the 127 registration additionally contained the software programs and job control language previously authored by Brownstein, which had enabled the Ethnic Determination System to be automated and processed by computer.

22.   Lindsay did not provide Brownstein with a copy of the Certificate of Registration.   Lindsay did not provide Brownstein with a copy of the materials deposited with the Copyright Office.

23.   Brownstein was aware of the supplemental registration, as he provided Lindsay with papers copies of the source code of the programs that he had authored.   Brownstein did not know until 2009 that Lindsay had registered the work as sole author, that she had in fact claimed authorship of software authored by Brownstein, or that she claimed sole authorship of the work fixed in 1994.

**Brownstein and Lindsay Devote all Efforts**
**to TAP and the Ethnic Determination System**

24.   Lindsay resigned from LSDI on June 18, 1997.

25.   Brownstein resigned from LSDI on on June 24, 1997.

26.   TAP commenced active operation after the time that Lindsay and Brownstein terminated their employment with LSDI.

27.   On June 1, 1997, Lindsay executed an exclusive license of her interest in the Ethnic Determination System, (then known as "LCID"), to TAP.   The

license expressly conveyed to TAP the right to use the entire work as fixed in 1994, including both the ethnic rules and software components.

28.    In this license agreement, Lindsay again falsely identified herself as the sole copyright holder.

29.    In the license, Lindsay describes the Ethnic Determination System as "a set of both computer programs and data files" and includes "a series of computer programs that analyze individual names utilizing the system data."

30.    Lindsay further stated that the computer programs and the system data are "irrevocably entwined."

31.    Lindsay did not disclose to Brownstein that she had executed any such license in favor of TAP.

32.    Brownstein was not provided with a copy of the license and did not discover its existence until 2009.

33.    At no time has Brownstein executed a writing conveying his interest as co-author in the work, as fixed in 1994 and as described by Lindsay in the 1997 license agreement to any third party.

**TAP and CMR Form an LLC**

34.    On September 26, 1997, TAP entered into a Joint Venture Agreement with CMR under which TAP and CMR were to form Ethnic Technologies, LLC ("E-Tech"), with TAP and CMR as its two equal members.

35.    As part of this agreement, TAP agreed to provide the Ethnic Determination System (referred to as the "TAP System" in this document).  The TAP

system was to be combined with CMR's last-name based ethnic system to form a new combined system to be used by E-Tech.

36.     The resulting work (the "Ethnic System") is a derivative work of the Ethnic Determination System authored by Brownstein and Lindsay and the pre-existing CMR system. The Ethnic System is principally based on the Ethnic Determination System authored by Brownstein and Lindsay, incorporates certain last name data that comprised the CMR system, to the extent not duplicated by the Ethnic Determination System.

37.     This agreement further provided that Ginger Nelson ("Nelson"), owner of CMR, would serve as the President and CEO, Lindsay as the Executive Vice President, CFO and Treasurer, and Brownstein as Production and Development Director and CIO (Chief Information Officer).

38.     Lindsay executed this agreement on behalf of TAP.

39.     On December 28, 2000, TAP and CMR executed a second agreement styled as an Operating Agreementm for E-Tech.

40.     The 2000 Agreement grants a license from TAP for the use of the Ethnic Determination System to E-Tech through 2017 as part of the derivative system.

41.     The sole business of TAP was the licensing of the Ethnic Determination System fixed by Lindsay and Brownstein in 1994 and the subsequent derivations thereof.

42.     Brownstein and Lindsay continued to work on the Ethnic Determination System, as E-Tech employees using E-Tech computers. Multiple derivations of the original work have been developed.

43.    Brownstein continued to be a 50% shareholder, officer, and director of TAP and a manager at E-Tech until May 2010.

44.    At all times until Brownstein left E-Tech and TAP in May 1994, Brownstein and Lindsay shared the revenue of TAP equally.

45.    At all times during this period, Brownstein was treated and compensated in a manner equivalent to that of Lindsay.

46.    Brownstein was advertised as the designed of the software component of the E-Tech system until at least April 2009.

**Lindsay First Repudiates Brownstein's Ownership**

47.    On February 22 and 23, 2010, Lindsay testified in connection with litigation then pending in the Superior Court of New Jersey that she had included Brownstein's computer programs in the 127 registration.

48.    Lindsay further admitted that she had registered the work as fixed in tangible form by herself and Brownstein under her own name as sole author.

49.    Through his counsel, Brownstein thereafter demanded that Lindsay amend the 127 registration to list him as a joint author by letter correspondence dated March 5, 2010.   Lindsay and Brownstein were employed in the direct mail industry, working for companies that provided customers with services related to bulk direct mail.

50.    The services provided by the employers of Brownstein and Lindsay used computers to provide services to direct mail customers.

**The Nature of the Work**

49.    The direct mail industry relies on computer systems to process lists of names and addresses.   Because of the size of the name and address lists, manual

application of any encoding technology is not feasible.  At no time, did either Brownstein or Lindsay consider the Ethnic Determination System complete without the use of software to process the rules developed by Lindsay.

50.    Lindsay first consulted Brownstein about the idea of using a first-name based ethnic system in early 1994.  At that time, Lindsay's system was still only an idea written on a single piece of paper.

51.    As Lindsay began to develop more complex rules, she provided Brownstein with specifications of her system and Brownstein contemporaneously created the software necessary to make use of the system in the direct mail industry.

52.    No software then existed to permit the application of the ethnic rules devised by Lindsay to a name and address list.

53.    Lindsay and Brownstein initially conceived of the software as a single program in which the each name would be processed against the ethnic rules devised by Lindsay.  Brownstein authored such a program from scratch writing in the computer language COBOL.  Brownstein discovered however, that the single program did not function as anticipated.

54.    Brownstein thereafter conceived of and authored a series of inter-related programs as well as a protocol for processing the names and address lists.  Brownstein wrote the code himself, again in COBOL.  Brownstein's expression of the software sought to maximize accuracy and speed, as well as the ability to provide results in a format most satisfactory to end users.

55.    Brownstein arranged the elements of the program in a specific order.  He further designed the software's outputs and reports.  Because the ethnic system under

development was unlike any other process in the direct mail industry, Brownstein authored each of the programs without significant use of elements borrowed from other software systems. To the extent that Brownstein utilized standard elements in the software, he was required to arrange those components in a novel fashion.

56. The software programs authored by Brownstein and his organization of the programs into protocols for use (known as Job Control Language or "JCL") were original works of creative authorship fixed in a tangible form. The expression of the software programs was fixed using the computer language COBOL and the JCL was fixed in hard copies.

57. Brownstein's original programs and JCL were used to creative various derivative works, including programs written for personal computers and server environments. His expression of the software was incorporated into multiple updates and the programs were translated into different computer programming languages.

58. From 1994 to May 2009, Brownstein created various computer programs that allowed the Ethnic Determination System to be used in a commercially practical manner. Brownstein further supervised the translation of the original work into other computer languages.

59. Lindsay's expression of the ethnic rules embodied in the Ethnic Determination System, including without limitation the organization, order and coding, and incorporation of pre-existing elements, was an original work of creative authorship fixed in tangible form. The ethnic rules component have been updated and modified from the time of creation through the present.

60.    The Ethnic System is now available in multiple languages and has been revised and updated on multiple occasions.  Each such update and revision and each translation into alternative computer languages are derivative works of the original works.

61.    The intention of Brownstein and Lindsay in creating an Ethnic Determination System was to exploit the observations of Lindsay concerning certain ethnic rules within the direct mail industry.  Without automated processing of Lindsay's ethnic rules, the Ethnic Determination System has no commercial value.

62.    Brownstein's computer programs also serve to ensure accuracy of the Ethnic Determination System.

63.    The Ethnic Determination System is a "whole system design concept," in which the data and the programs were both integral parts to the system and are inextricably combined.

64.    Lindsay and Brownstein intended the Ethnic Determination System as a single work.  The Ethnic Determination System and the subsequent Ethnic System have never been offered for any commercial use without the software, or derivations thereof, authored by Brownstein.

**The Relationship of the Parties**

65.    From the time that TAP was formed in June 1996 until May 2010, Lindsay and Brownstein were the only shareholders and officers of a closely held corporation.

66.    As the officers and shareholders of a close corporation, Brownstein and Lindsay each owed to the other fiduciary duties of loyalty and care:

67. In breach of her fiduciary duties to Brownstein, Lindsay failed to disclose to Brownstein her intention to misappropriate the sole asset of TAP to herself, namely the complete work as originally fixed, by filing a registration statement covering the entire work in her own name as sole author.

68. At no time prior to 2009 did Lindsay tell Brownstein that she claimed the entire work as her own. At no time did Lindsay disclose the contents of the materials registered with the U.S. Copyright Office or the license that she had executed in favor of TAP.

69. Moreover, at no time did Lindsay repudiate Brownstein's status as co-author of the work.

70. At no time did Brownstein receive less compensation than Linsday.

71. Brownstein reasonably relied on Lindsay's silence and failure to disclose material facts under circumstances in which disclosure was required in failing to inquire about Lindsay's registration. Brownstein had no notice, actual or constructive, that Lindsay disputed his status of co-author and was, in fact, at all times, treated as co-author.

72. Brownstein never felt the need to question his status at TAP or in terms of the copyright because of his consistent treatment as an equal partner and owner by Lindsay and his trust in her.

73. Brownstein did not know that Lindsay did not believe that he held any rights in the work.

74. The settlement agreement in the lawsuit with LSDI states only that Lindsay "obtained" copyright registrations and is silent as to Brownstein's rights.

75.   Brownstein was unaware of the existence of the written assignment of the Ethnic Determination System from Lindsay to TAP until late 2009 and Lindsay did not provide him with a copy.

76.   E-Tech has not paid Brownstein any royalties since May 2010.

77.   Lindsay, through counsel, expressly repudiated Brownstein's ownership in the Ethnic Determination System by letter dated March 9, 2010 and not earlier.

78.   E-Tech is principally a software company, deriving the greates portion of its revenues from the licensing its Ethnic System software to third parties.  E-Tech further uses the Ethnic System software to encode software for the purpose of providing services to direct mail customers.

79.   Brownstein failed to act in reliance on Lindsay's non-disclosure under circumstances when Lindsay had an affirmative duty to disclose.

80.   At no time did Brownstein through any affirmative conduct indicate that he had any intention to waive or forfeit his right as joint author to credit as joint author or to receive a royalty from the income earned by the work.

B.   **PLAINTIFF INTENDS TO PROVE THE FOLLOWING CONTESTED FACTS WITH REGARD TO DAMAGES:**

N/A (Bifurcated Trial)

5.   **DEFENDANTS' CONTESTED FACTS** (Stated separately for each plaintiff. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

A.   Defendants intend to prove the following contested facts with regard to liability:

1.   In December 1993, Tina Lindsay shared her ideas with Peter Brownstein about creating an "Ethnic Determinant System."   The Ethnic Determinant System would

analyze names with an artificial intelligence rule based system. By January 1994, Lindsay had compiled a vast amount of research, categorizing unique first names and origins of last names and developed a series of expert system rules (i.e. looking a parts of a name to predict ethnicity based upon the order). Lindsay also developed a conceptual design for the Ethnic Determinant System, which would be a table-driven, data system with the intelligence residing in the data itself.

2.      Lindsay met with her and Brownstein's mutual boss at List Service Direct, Inc., f/k/a Future Prospective Clients, Inc. (collectively "LSDI"), Tom Raskin, about the company utilizing her Ethnic System work. In February 1994. Raskin was not interested in her work, but allowed Lindsay install her data at LSDI.

3.      In November 1995, Raskin asked Brownstein about, "Loretta's Ethnic System," to which Brownstein responds that he "thought it was Tina's Ethnic System." Around this same time, Lindsay tells Brownstein that she had written to the copyright office and had received registration forms, but had not filled them out.

4.      In December 1995, Lindsay tells Brownstein that she is sending her work to the copyright office.   Lindsay registers her Ethnic Determinate System with the United States Copyright Office on February 12, 1996.  Brownstein was aware of the copyright registration at the time it was issued.

5.      After Lindsay registered her copyright, she and Brownstein discussed in May 1996 forming a software company that would sell, among other things, the ethnic system. Out of those discussions, Lindsay and Brownstein formed TAP Systems, Inc. ("TAP") on June 17, 1996, with each owning 50 percent of the shares.

6.      The principal corporate activity of TAP was computer program development.  Brownstein was not only a 50 percent owner of TAP, but he was also an officer, TAP's treasurer, vice-president, and sole computer programmer.

7.      In Fall 1996, Brownstein was present for a conversation between Tom Raskin and Lindsay where Mr. Raskin asks Ms. Lindsay "whatever happened to that copyright?" Lindsay told Mr. Raskin that "the copyright was in her name because she initiated it and did all the work and spent her own money and time to do it."   When he heard Lindsay's statement, Brownstein did not question her about the statement.

8.      Brownstein printed out documents that he alleges to have created from the LSDI mainframe for Lindsay to submit to the United States Copyright Office for her second copyright registration. Brownstein never had any conversations with Lindsay about his inclusion on her copyright. Lindsay never told him that he would be included on the copyright. Brownstein never asked Lindsay if he was included on the copyright. Brownstein never asked to see any of the copyright applications that Lindsay had submitted to the Copyright office.

9.      The programs submitted to the Copyright Office as examples of how the Ethnic Determinant System could be utilized were only part of the second copyright submission, the rest of which was comprised of additional research and additional specifications. As Mr. Brownstein has admitted, the programs that are the subject of his claim were "simple" to code after Tina Lindsay gave him her exact specifications.  The  programs as "compares;" commonly used in all programming languages to match and compare data.  Nothing distinguished Brownstein's programs from these basic "compares" programs, which only served to increase the calculating speed of Lindsay's Ethnic Determinant System.  Lindsay's Ethnic Determinant System exists independently of any computer program and can be used by any number of

programs, including programs written in entirely different languages.  The System may also be

used without a computer program, however, the benefit of the program is speed and commercial

application.

10.     The remarkable thing about Lindsay's work, which is how Brownstein

referred to the System prior to this lawsuit was that, as Brownstein explained, "the intelligence

resided in the data," not in the computer program.  Lindsay's system was an artificial intelligence

that could determine a person's ethnicity independent of a computer. The programs were written

"exactly" to "her [Lindsay's] specifications." As Brownstein admits, Lindsay's system could be

used independently of his computer programs; the sole function of the programs was to increase

calculating speed.

11.     Lindsay licensed her Ethnic Determinant System, which when combined

with a computer program became a product called LCID (the "L" in LCID stood for "Lindsay"),

to TAP on June 1, 1997.

12.     On July 21, 1997, LSDI filed a lawsuit against Tina Lindsay alleging that

her Ethnic Determinant System was a work-for-hire, requesting that the Court assign the

certificate of registration of copyright filed by Lindsay to LSDI.   The LSDI Complaint sets

forth that Lindsay "wrongfully applied for and obtained a certificate of copyright registration…in

her own name as author."  Brownstein was aware of the lawsuit and knew that LSDI wanted

ownership and possession of the copyright of the ethnic system.

13.     In support of Lindsay's defense of her copyright in the LSDI lawsuit,

Brownstein executed an affidavit on September 8, 1997.  In his affidavit, Brownstein referred to

Lindsay's Ethnic Determinant System as "her idea" and repeatedly refers to the system as "her

work".  Brownstein's affidavit also confirms that he witnessed a conversation between Lindsay

and Tom Raskin where Lindsay told Raskin that the copyright was in "her name because she

initiated it and did all the work and spent her own time and money to do it."

14. On September 26, 1997, TAP entered into a joint venture (the "1997

Agreement") with Consumers Marketing Research, Inc. ("CMR") in which the two companies

combined to form Ethnic Technologies, LLC ("E-Tech"). The 1997 Agreement which identified

the assets of TAP as consisting of ethnic "information coding" which "can be supplied on

magnetic tape, and to which TAP owns all rights, including copyrights" and licensed all those

assets to the joint venture. The 1997 Agreement made clear that whatever TAP had, including

the TAP System and the programs that made it accessible on a mainframe computer using

magnetic tape which Brownstein now claims to own, were for use by the combined companies.

Brownstein agreed with Lindsay that TAP should enter into the 1997 Agreement. Brownstein

was present for the discussions about forming the E-Tech and he was also present at the signing

of the Agreement. Lindsay and Brownstein discussed that TAP's interest in the Lindsay

copyright was now merged into E-Tech..

15. On May 21, 1998, LSDI filed an Amended Complaint adding TAP

Systems, Inc. and Peter Brownstein as defendants.  The Amended Complaint states specifically

that "Lindsay wrongfully applied for and obtained a certificate of copyright registration... in her

own name as author." The Amended Complaint had Lindsay's February 1996 registration

annexed to it.

16. The LSDI lawsuit settled on September 18, 1998; the settlement was

memorialized by an agreement signed by all parties, including Lindsay, TAP, and Brownstein.

The settlement agreement signed by Brownstein provided that he parties acknowledge and agree

that Tina Lindsay obtained a Certificate of Registration from the United States Copyright  Office

effective February 12, 1996 for EDS which may be called LCID, bearing United States
Copyright Office Registration number TXU 730-872. The settlement agreement also provided
that the parties acknowledge and agree that Tina Lindsay obtained a second Certificate of
Registration from the United States Copyright office effective December 10, 1996 for a
derivative work entitled "An Ethnic Determinant System – Knowledge and Rule/Exception Basis
(hereinafter also called "EDS", bearing United States Copyright Office Registration number
TXU-778-127.

17.    Even after signing the settlement agreement, Brownstein never asked
Lindsay whether he was included on her certificates of registration as a joint author.

18.    On December 28, 2000, with Brownstein's agreement (he read and
initialed the agreement), TAP and CMR entered into a new Operating Agreement for E-Tech,
which made clear that the combined companies were vesting in E-Tech all intellectual property.
Pursuant to the 2000 Agreement TAP vested its exclusively owned "TAP System," comprised of
Lindsay's copyrighted work and Brownstein's alleged programs, in the new company.

19.    The 2000 Agreement also created the new "E-Tech System," which was
comprised of the same TAP system that included Lindsay's copyrights. After the 2000
Agreement, TAP became essentially a holding company, receiving profit distributions from E-
Tech. Brownstein served as a managing member and Chief Information Officer employed by E-
Tech. Even now, Brownstein admits he is uncertain whether he has any remaining alleged
interest in the E-Tech System – an admission he makes because he knows full well that he
transferred whatever he had to E-Tech long ago.

20.    Brownstein never received royalty payments, cannot remember whether
he expected to receive any royalty payments and never even discussed royalty payments with his

partners.  In fact, from 1998 to 2009, Brownstein worked intimately with Lindsay, as an

employee of E-Tech, to develop, promote, and market the E-Tech System, but he said absolutely

and utterly nothing about his alleged interest in the copyrights, all while he repeatedly

implemented licenses from E-Tech to others of the work he now claims to own.

          21.      On behalf of E-Tech, Brownstein signed at least five agreements that

licensed the E-Tech System, which the agreements identified as "both proprietary computer

programs and data files" for which E-Tech "owns all rights, including copyrights." Brownstein

admits that in those agreements, E-Tech was licensing the E-Tech System, which was comprised

of his computer programs and Lindsay's copyrights.  All of those agreements were signed more

than three years before plaintiff brought his claim seeking a declaration of joint authorship.

          22.      From 1998 to 2010, Brownstein worked almost daily with Lindsay and

with his joint authors in E-Tech to develop, promote, and market the E-Tech System.

          23.      After filing suit in state court against E-Tech, Brownstein settled the

lawsuit, which settlement agreement included his delivery to E-Tech of all diskettes containing

programs he wrote, without ever making a claim for replevin of the programs.

      B.      Defendants intend to prove the following contested facts with regard to damages:
(This statement must include the factual basis for each defense against the plaintiff's claims for
damages.)

      Not applicable

6.     **PLAINTIFF'S WITNESSES** (Aside from those called for impeachment purposes, only
the witnesses and rebuttal witnesses whose names and addresses are listed below will be
permitted to testify at trial.)

      A.      On liability plaintiff intends to call the following witnesses who will testify in
             accordance with the following summaries:

            ii.      Peter Brownstein – [these summaries need to be longer]  Brownstein will
                    testify as to his authorship of the computer programs and protocols

necessary to run the Ethnic Determination System. Brownstein will further testify as to his business relationship and friendship with Lindsay from their first meeting until May 2010. Brownstein will testify as to his knowledge of Lindsay's actions in reference to copyright registration and his status as joint author.

iii.  Tina Lindsay – Lindsay will testify that the ethnic system rules and software programs to automate the application of the rules were fixed in 1994. She will futher testify that the testing of the system, including software programs, was undertaken during 1995 and 1996. She will further testify that Ethnic Determination System was fixed in completed form at the time that tests were conducted on behalf of Acxiom Inc. and Harte Hanks during the spring of 1996. Lindsay will further testify

iv.  Ginger Nelson – Ginger Nelson will testify as to the employment of Brownstein and Nelson by CMR, the formation of the joint venture E-Tech by CMR and TAP Systems, Inc., the nature of the business of E-Tech, the licensing of E-Tech's software and the settlement of the LSDI litigation.

v.  O. Gene Hurst – Hurst will testify that he represented the defendants in LSDI v. Lindsay, et al. He will further testify as to the conduct of the litigation and the termination of the litigation by negotiated settlement.

B.  On damages plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

a. Not Applicable

C.  Defendant objects to the following witnesses for the reasons stated:

1)  **Ginger Nelson** – Ms. Nelson's testimony is irrelevant and redundant. Further, the only thing Ms. Nelson is offered to show are facts not in dispute.
*WILL NOT BE CALLED IN CASE IN CHIEF; POSSIBLY REBUTTAL WITNESS.*

2)  **Alan Lawrence** – plaintiff's description of Mr. Lawrence's purported testimony is insufficiently vague, preventing defendants from adequately assessing his purported testimony. *MOOT - WILL NOT BE CALLED.*

7.  **DEFENDANTS' WITNESSES** Aside from those called for impeachment purposes, only the witnesses and rebuttal witnesses whose names and addresses are listed below will be permitted to testify at trial.)

A.  On liability defendants intend to call the following witnesses who will testify in accordance with the following summaries:

1)  **Tina Lindsay**
    **600 Huyler Street,**
    **South Hackensack, NJ 07606**

COBOL programmer in late 1960s through early 1970s, progressively higher IT positions, IT management 1976 thru 1991, including as Brownstein's manager in 1988, early 1989 (held Directorships) Ms. Lindsay will testify as to simplicity of COBOL programs, (simple match and compare logic). Lindsay conceived of, developed and refined a methodology whereby a person's ethnicity, race, and religion could be predicted upon examining the persons name and address, and applying a pre-ordered set of specifications designed by Lindsay to match that name and address versus hundreds of thousands of first and last names researched by Lindsay, as well as thousands of expert system rules to utilize in case no match had been found on the first or last names. All of this research and design was done outside of her employment with a company named List Service Direct, Inc. ("LSDI")

Lindsay called her system "An Ethnic Determinant System."

Lindsay's Ethnic Determinant System was copyrighted in 1996. Brownstein contributed nothing to her copyright. She updated the copyright in 1996 at which time she submitted some of Brownstein's programs as examples to show how her system could be implemented. Brownstein printed out the programs for her to send to the Copyright Office and was fully aware that she was submitting his programs as examples of the application of her Ethnic Determinant System.

Together, Ms. Lindsay and Brownstein formed TAP Systems, Inc. in 1996. They each owned a 50% interest in TAP, which was a computer software company with one asset – an exclusive license to use and sell Lindsay's Ethnic Determinant System. Brownstein was also an officer, TAP's treasurer, vice-president, and sole computer programmer.

Lindsay, TAP and Brownstein, were sued by Lindsay and Brownstein's former employer, LSDI, in a lawsuit seeking ownership of Lindsay's copyright. The lawsuit resulted in a settlement whereby the parties acknowledge Lindsay's sole ownership of the copyright. Brownstein signed the agreement.

In 1997, TAP and Consumers Marketing Research ("CMR") entered into a joint venture memorialized by an agreement on September 26, 1997 in which TAP granted its exclusive license in Lindsay's copyright to the newly formed LLC.

On December 28, 2000, TAP and CMR formed Ethnic Technologies, LLC ("E-Tech"). The Operating Agreement, initialed by Brownstein, vested the "TAP System" which was comprised of TAP's exclusive copyright in LCID combined with updated computer programs, in the newly formed, E-Tech. Brownstein was a managing member and Chief Information Officer at E-Tech. During his time at E-Tech, he signed at least five licensing agreements in which he licensed the work he purports to own to outside companies from E-Tech.

During their years working together, Brownstein never asked whether he was included as a joint author of Lindsay's copyright, despite having never signed a licensing agreement himself permitting TAP or E-Tech to use his copyrighted work.

Brownstein filed a lawsuit against E-Tech and Lindsay in May 2009 because E-Tech had hired a CEO and Brownstein was frustrated with the direction of the company. Brownstein ultimately received a buyout of his shares in TAP, thus his ownership in E-Tech on May 25, 2010 for $1.1 million.

2)   **John Hosfield**
     **600 Huyler Street,**
     **South Hackensack, NJ 07606**

Mr. Hosfield is a computer programmer for E-Tech and has worked with the programs at issue in this litigation. The programs are simple match and compare programs that are used by every programmer. Through the years, Mr. Hosfield worked with Brownstein and implemented numerous changes to the programs, rewriting code and adjusting the program to better utilize the LCID/TAP System/E-Tech System and meet the needs of the client. The programs submitted to the copyright office by Lindsay bear little to no resemblance to the programs used by E-Tech today.

3)   **Allan Lawrence**
     **600 Huyler Street,**
     **South Hackensack, NJ 07606**

Mr. Lawrence is a computer programmer for E-Tech and has worked with the programs at issue in this litigation. The programs are simple match and compare programs that are used by every programmer. Through the years, Mr. Lawrence worked with Brownstein and implemented numerous changes to the programs, rewriting code and adjusting the program to better utilize the LCID/TAP System/E-Tech System and meet the needs of the client. The programs submitted to the copyright office by Lindsay bear little to no resemblance to the programs used by E-Tech today.

4)   **Joanne Nicholson**
     **600 Huyler Street,**
     **South Hackensack, NJ 07606**

Ms. Nicholson is a computer programmer for E-Tech and has worked with the programs at issue in this litigation. The programs are simple match and compare programs that are used by every programmer. Through the years, Ms. Nicholson worked with Brownstein and implemented numerous changes to the programs, rewriting code and adjusting the program to better utilize the LCID/TAP System/E-Tech System and meet the needs of the client. The programs submitted to the copyright office by Lindsay bear little to no resemblance to the programs used by E-Tech today.

5)   **David Reinken**
     **600 Huyler Street,**
     **South Hackensack, NJ 07606**

Mr. Reinken is a computer programmer for E-Tech and has worked with the programs at issue in this litigation. The programs are simple match and compare programs that are used by every programmer. Through the years, Mr. Reinken worked with Brownstein and implemented numerous changes to the programs, rewriting code and adjusting the program to better utilize the LCID/TAP System/E-Tech System and meet the needs of the client. The programs submitted to the copyright office by Lindsay bear little to no resemblance to the programs used by E-Tech today.

6)   **O. Gene Hurst, Esq.**
     **1088 Raritan Road**
     **Clark, New Jersey 07066**

Mr. Hurst was the former attorney of Brownstein and Lindsay during the LSDI litigation. Mr. Hurst will testify that he represented both parties in defending Lindsay's copyrighted work. And, that as the parties' attorney, he made sure to counsel his clients on the matters at issue in the litigation, including what LSDI was seeking in the litigation (ownership of Lindsay's copyright).

B.   On damages defendants intend to call the following witnesses who will testify in accordance with the following summaries:

C.   Plaintiff objects to the following witnesses for the reasons stated:

<u>Tina Lindsay</u> – Plaintiff objects to the testimony of Tina Lindsay to the following extent:

- That she provided explicit instructions as to the construction of the software authored by Brownstein.. The testimony is irrelevant and seeks to proffer evidence relevant to a standard that has been rejected by the U.S. Supreme Court in *Communituy for Creative Non-Violence v. Reid,* 490 U.S. 730 (1989). The testimony is irrelevant and can only confuse the jury.

*TRIAL BRIEF*

- That she seeks to offer an opinion as to the "simplicity of COBOL" or to the alleged lack of originality. Defendant has made no disclosures of any expert or opinion testimonyMs. Lindsay has not provided any expert report

- That she attempts to refer to the software programs registered with the U.S. Copyright Office as "samples" or otherwise to contradict the Certificate of Registration without good cause.

- That Lindsday refers to the 1987 settlement agreement

<u>John Hosfield</u> – Mr. Hosfield was not disclosed as a person with knowledge in defendants' voluntary disclosures. He is further offered as an expert witness without having provided any expert disclosures and seeks to rely on or refer to documents and other materials that defendants have not produced to plaintiff. Moreover his testimony is not relevant to the only issue in controversy at this phase of the proceeding, whether Brownstein is a joint author of the LCID. Testimony regarding subsequent revisions to the E-Tech system are relevant, if at all, on the issue of damages.

*PRECLUDE IN LIABILITY TRIAL*

<u>Allan Lawrence</u> – Mr. Lawrence was not disclosed as a person with knowledge in defendants' voluntary disclosures. He is further offered to render opinion testimony as to the similarlity between the original work and the product currently marketed by E-Tech without having provided any expert disclosures. He further seeks to rely on or refer to documents and other materials that defendants have not produced to plaintiff. Moreover his testimony is not relevant to the only issue in controversy at this phase of the proceeding, whether Brownstein is a joint author of the LCID. Testimony regarding subsequent revisions to the E-Tech system are relevant, if at all, on the issue of damages.

*WILL NOT BE CALLED*

<u>Joanne Nicholson</u> – Ms Nicholson was not disclosed as a person with knowledge in defendants' voluntary disclosures. She is further offered to render opinion testimony as to the similarlity between the original work and the product currently marketed by E-Tech without having provided any expert disclosures. She further seeks to rely on or refer to documents and other materials that defendants have not produced to plaintiff. Moreover her testimony is not relevant to the only issue in controversy at this phase of the proceeding, whether Brownstein is a joint author of the LCID. Testimony regarding subsequent revisions to the E-Tech system are relevant, if at all, on the issue of damages.

*PRECLUDE IN LIABILITY TRIAL*

- 26 -

David Reinken -- Mr. Reinken was not disclosed as a person with knowledge in defendants' voluntary disclosures. He is further offered to render opinion testimony *[PRECLUDED IN LIABILITY TRIAL]* as to the similarlity between the original work and the product currently marketed by E-Tech without having provided any expert disclosures. He further seeks to rely on or refer to documents and other materials that defendants have not produced to plaintiff. Moreover his testimony is not relevant to the only issue in controversy at this phase of the proceeding, whether Brownstein is a joint author of the LCID. Testimony regarding subsequent revisions to the E-Tech system are relevant, if at all, on the issue of damages.

*[handwritten: ZACHERY WILHOIT CEO OF ETECH — PRECLUDED IN LIABILITY TRIAL]*

8.   **EXPERT WITNESSES** (No expert shall be permitted to testify at trial unless identified below and unless a summary of his qualifications and a copy of his report is attached hereto. The summary shall be read into the record at the time he takes the stand, and opposing counsel shall not be permitted to question his qualifications unless the basis or objection is set forth herein.)

A.   Plaintiff's expert witnesses are:
     None

B.   Defendants' objections to the qualifications of plaintiff's experts are:

C.   Defendants' expert witnesses are:

     **John Hosfield**
     **600 Huyler Street,**
     **South Hackensack, NJ 07606**

*[handwritten: PRECLUDED IN LIABILITY TRIAL]*

     Mr. Hosfield is a computer programmer with over 30 years of experience in mainframe COBOL programming and 12 years experience as a c/c/ ++ programmer in both Windows and Linux. Mr. Hosfield is employed by E-Tech and has worked with the programs at issue in this litigation. The programs are simple match and compare programs that are used by every programmer. Through the years, Mr. Hosfield worked with Brownstein and implemented numerous changes to the programs, rewriting code and adjusting the program to better utilize the LCID/TAP System/E-Tech System and meet the needs of the client. The programs submitted to the copyright office by Lindsay bear little to no resemblance to the programs used by E-Tech today.

D.   Plaintiff's objections to the qualifications of defendants' experts are:

     Defendant has neither disclosed Mr. Hosfield as a person with knowledge nor provided expert disclosures as required by Fed. R. Civ. Proc. 26(a)(2). On its face, Mr. Hosfield's testimony is inadmissible under Fed. R. Evid. 702 and *Daubert v.*

*Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its progeny in that the opinion is not relevant to any contested issue.

9.   **PLAINTIFF'S DEPOSITIONS**   (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed).

A.   On liability plaintiff intends to read into evidence the following:

Page 6 Line 1 to Page 6 Line 5
Page 8 Line 11 to Page 9 Line 1
Page 10 Line 3 to Page 10 Line 17
Page 10 Line 18 to Page 11 Line 8
Page 13 Line 3 to Page 14 Line 6
Page 14 Line 14 to Page 15 Line 3
Page 14 Line 14 to Page 15 Line 3
Page 15 Line 12 to Page 15 Line 25
Page 16 Line 1 to Page 16 Line 15
Page 17 Line 21 to Page 18 Line 12
Page 20 Line 3 to Page 20 Line 23
Page 22 Line 15 to Page 23 Line 9
Page 23 Line 23 to Page 24 Line 13
Page 24 Line 14 to Page 24 Line 19
Page 24 Line 14 to Page 24 Line 19
Page 25 Line 5 to Page 25 Line 11
Page 25 Line 20 to Page 26 Line 2
Page 26 Line 10 to Page 26 Line 11
Page 26 Line 20 to Page 27 Line 10
Page 27 Line 13 to Page 27 Line 23
Page 31 Line 3 to Page 31 Line 20
Page 32 Line 9 to Page 32 Line 18
Page 34 Line 14 to Page 35 Line 3
Page 35 Line 20 to Page 35 Line 23
Page 42 Line 7 to Page 42 Line 20
Page 43 Line 23 to Page 44 Line 5
Page 45 Line 5 to Page 45 Line 13
Page 45 Line 14 to Page 45 Line 18
Page 45 Line 19 to Page 46 Line 2
Page 48 Line 1
Page 48 Line 24 to Page 49 Line 7
Page 49 Line 12 to Page 49 Line 20
Page 50 Line 20 to Page 50 Line 23
Page 53 Line 5 to Page 53 Line 21
Page 53 Line 22 to Page 54 Line 17
Page 54 Line 18 to Page 55 Line 20

Page 55 Line 21 to Page 56 Line 11

B.  On damages plaintiff intends to read into evidence the following:

Not Applicable

C.  Defendant objects to the deposition testimony set forth above for the reasons stated:

The parties have agreed to preserve their objections to designated testimony

10. **DEFENDANTS' DEPOSITIONS** (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed).

A.  On liability defendants intend to read into evidence the following:

Brownstein:

7:16-8:18
14:18-15:1
23:25-24:14
31:17-32:24
33:5-34:9
34:13-25
36:10-37:17
37:25-38:11
38:12-25
44:24-46:6
58:22-59:4
59:9-61:7
62:9-63:20
64:2-65:1
65:2-25
66:8-13
66:20-68:9
69:1-70:16
71:11-72:9
78:9-80:7
80:10-19
81:14-24
86:12-87:1
87:22-89:5

89:19-23
91:9-92:3
92:17-93:7
93:10-20
95:1-17
95:20-23
95:25-96:2
96:5-19
97:4-98:14
102:6-13

B.  On damages defendants intend to read into evidence the following:

Not applicable

C.  Plaintiff objects to the deposition testimony set forth above for the reasons stated:

The parties have agreed to preserve their objections to designated testimony.

## 11.  PLAINTIFF'S EXHIBITS

(Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made

A.  Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

1.  Affidavit of Tina Lindsay, dated August 10, 1997.

2.  Certificate of Copyright Registration, bearing registration number TXu-730-872, dated February 12, 1996.

3.  Deposit copy associated with Certificate of Copyright Registration TXu-730-872.

4.  Certificate of Copyright Registration, bearing registration number TXu-778-127, dated December 10, 1996.

5.  Deposit copy associated with Certificate of Copyright Registration TXu-778-127, including software and JCL authored by Brownstein/

6.  TAP Systems, Inc. Corporate Records, dated June 18, 1996.

7.   TAP Systems, Inc. Corporate Tax Returns, 1997-2000.

8.   Joint Venture Agreement between TAP Systems, Inc. and CMR, Inc., dated September 26, 1997.

9.   Ethnic Technologies, LLC Operating Agreement, dated December 28, 2000.

10.   Letter correspondence from Jay R. McDaniel, Esq. to Thomas S. Howard, Esq., dated March 5, 2010.

11.   Letter correspondence from Thomas S. Howard, Esq. to Jay R. McDaniel, Esq., dated March 9, 2010.

12.   Assignment of Copyright executed by Tina Lindsay, dated June 1, 1997.

B.   Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection).

| Exh. No. | Description | Objection |
|---|---|---|
| 1 | Affidavit of Tina Lindsay, dated August 10, 1997 | Hearsay |
| 2 | Certificate of Copyright Registration, bearing registration number TXu-730-872, dated February 12, 1996 | Irrelevant, the first copyright submission contains none of plaintiff's work and is not at issue in this litigation. |
| 3 | Deposit copy associated with Certificate of Copyright Registration TXu-730-872 | Irrelevant, the first copyright submission contains none of plaintiff's work and is not at issue in this litigation. |
| 5 | Deposit copy associated with Certificate of Copyright Registration TXu-778-127, including software and JCL authored by Brownstein | Juror confusion, delay, no expert to explain |
| 6 | TAP Systems, Inc. Corporate Records, dated June 18, 1996 | Irrelevant |
| 7 | TAP Systems, Inc. Corporate Tax Returns, 1997-2000 | Irrelevant |
| 10 | Letter correspondence from Jay R. McDaniel, Esq. to Thomas S. Howard, Esq., dated March 5, 2010 | Irrelevant, hearsay |
| 11 | Letter correspondence from Thomas S. Howard, Esq. to Jay R. McDaniel, Esq., dated March 9, 2010 | Irrelevant, hearsay |
| 12 | Assignment of Copyright executed by Tina Lindsay, dated June 1, 1997 | Mis-identified |

12.   **DEFENDANTS' EXHIBITS**

(Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.

A.    Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list( list by number with a description of each exhibit).

| Exh. No. | Description |
|---|---|
| D-1 | Affidavit made by Peter Brownstein dated August 8, 1997 |
| D-2 | Certificate of Registration from the United States Copyright Office, dated February 12, 1996 |
| D-3 | Certificate of Registration from the United States Copyright Office dated December 10, 1996 |
| D-4 | License Agreement between Tina Lindsay and TAP Systems, Inc., dated June 1, 1997 |
| D-5 | Complaint captioned *List Service Direct, Inc. v. Tina Lindsay and TAP Systems, Inc.*, Case No. 97-3504 |
| D-6 | Agreement dated September 26, 1997 between Consumers Marketing Research, Inc. and TAP Systems, Inc |
| D-7 | settlement agreement, dated September 18, 1998 |
| D-8 | Agreement dated December 28, 2000 between Consumers Marketing Research, Inc. and TAP Systems, Inc. |
| D-9 | Agreement, dated September 25, 2001 between Ethnic Technologies, LLC and Edith Roman Associates, Inc |
| D-10 | Agreement, dated November 14, 2002, between Ethnic Technologies, LLC and Wells Fargo Bank, N.A. |
| D-11 | Agreement, dated December 11, 2002, between Ethnic Technologies, LLC and Penn Media |
| D-12 | Agreement, dated May 27, 2003, between Ethnic Technologies, LLC and Merkle Data Technologies, Inc. |
| D-13 | Agreement, dated March 10, 2005, between Ethnic Technologies, LLC and Central Address Systems, Inc. |
| D-14 | the Settlement Agreement in the lawsuit in Bergen County Superior Court, captioned *Peter Brownstein, et al. v. Tina Lindsay, Ginger Nelson and G. Zachary Wilhoit*, Docket No.: C-150-09 |

B.    Plaintiff objects to the introduction of defendant's exhibits (set forth number of exhibit and grounds for objection).

7.    Relevance and undue prejudice. Fed. R. Evid. 401, 403.

14.    Relevance and undue prejudice, evidence of compromise. Fed. R. Evid. 401, 403, 408.

(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES SHOULD BE AVAILABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED).

13. **PLAINTIFF'S LEGAL ISSUES**

    1.   . **Copyright Protection** – Brownstein's computer programs are eligible for protection under the Copyright Act.

    2.   **Definition of the Work** – The scope of the work, as defined by the Copyright Act, the date and content thereof at the time that it was fixed, the component parts of the work and works later derived therefrom.

    3.   **Derivative Works** – the scope of "derivative works" as defined by the Copyright Act created after the fixing of the work.

    4.   **Originality** – Brownstein's contribution to the work are "original" works as defined by the Copyright Act.

    5.   **Authorship** – Brownstein is the "author" of the computer programs as defined by the Copyright Act.

    6.   **Joint Authorship** – Brownstein and Lindsay are "joint authors" of the Ethnic Determination System as defined by the Copyright Act.

    7.   **Licensing** – As a joint author, Lindsay could not have granted TAP an exclusive license without Brownstein's express written consent.

    8.   **Writing Requirement** – the assignment of a copyright requires a writing executed by the assignor.

    9.   **Express Repudiation** – Damages occur to a joint author at such time as there is an express repudiation of the co-author's rights, or conduct inconsistent with a claim of

    10.   **Accrual of injury** – the scope of injury and the point at time on which such injury first accrued.

    11.   **Fiduciary Duties** – the duties of care and loyalty existing between Brownstein and Lindsay as owners and officers of a close corporation.

    12.   **Constructive Trust** – Brownstein is entitled to a constructive trust for all royalties gained from commercial exploitation of the Ethnic Determination System starting in May 2010.

13.   **Resulting Trust** – At now time did Brownstein by word or action intend to assign or convey

14.   **Equitable Estoppel** – In reliance on the conduct of defendants, Brownstein did not demand inquire into Lindsay's claim of sole ownership of the work.

15.   **Presumption of validity**  -- The effect of the presumption of validity as to the scope of the work under 17 U.S.C. § 410.

14.   **DEFENDANTS' LEGAL ISSUES**

A.   Plaintiff's claim of joint authorship of Lindsay's copyright is subject to a three year statute of limitations.  See 17 U.S.C. §507(b).

B.   Plaintiff's claim of  joint authorship arises from the moment the alleged joint work is created.  See *Merchant v. Levy*, 92 F. 3d 51, 56 (2d Cir. 1996).

C.   The statute of limitations starts to run when plaintiff learns or should as a reasonable person have learned that defendant was violating his rights.  See Gaiman v. McFarlane, 360 F.3d 644, 653 (7th Cir. 2004).

D.   A "joint work" is a work "prepared by two or more authors with the intention that their contributions be merged into inseparable and interdependent parts of a unitary whole."  See 17 U.S.C. §101.

E.   In order for Brownstein to be a joint author of Lindsay's work, his contribution, if any, to Lindsay's work must have been independently copyrightable. See *Ashton-Tate Corp. v. Ross*, 916 F. 2d 516, 521 (9th Cir. 1990). See also *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 107 (2d Cir. 2002) (dismissing claim of joint authorship where plaintiff's contribution to software program was not an original contribution).

F.   The author of a work is the "party who actually creates the work, that is the person who translates an idea into a fixed, tangible expression that is embodied in a copy by herself, or who authorizes another to embody the expression in a copy."  See *Andrien v. Southern Ocean County Chamber of Commerce*, 927 F. 2d 132, 134 (1991).

G.   To be an "author," Brownstein must create copyrightable work, which is work that is "original" and "fixed" in a "tangible medium of expression."  17 U.S.C. § 102(a) (1994)

H.   "Original", as the term is used in copyright, means only that the work was independently created by the author [or authors], ... and that it possesses at least

some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

I.  An author is "he to whom anything owes its origin; originator; maker. " *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991; See also *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 107 (2d Cir. 2002).

J.  In considering whether Lindsay and Brownstein are joint authors, the Court must examine whether they shared an intent to be co-authors.  See *Childress v. Taylor,* 945 F.2d 500, 508 (2d Cir. 1991); See also Thomson v. Larson, 147 F. 3d, 195, 199 (2d Cir. 1998).

K.  The discovery rule governs claims arising under the Copyright Act.  See *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009).

L.  Under the discovery rule, a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.  See *William A. Graham Co. v. Haughey,* 568 F.3d 425, 439 (3d Cir. 2009).

M.  If the discovery rule applies to Brownstein's claim, the question is whether there were sufficient storm warnings to place Brownstein on inquiry notice.  See *William A. Graham Co. v. Haughey*, 568 F.3d 425, 439 (3d Cir. 2009).

N.  Lindsay has made a prima facie showing of copyright ownership by providing the Court with duly registered certificates of registration from the United States Copyright Office.  See *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 538 (D. N.J. 1999).

O.  Brownstein has the burden of rebutting the presumption arising from Lindsay's showing of ownership.  See *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 538 (D. N.J. 1999).

P.  Brownstein's action for replevin of programs created prior to 2000 is subject to a six year statute of limitations.  See N.J.S. 2A:14-1.

Q.  The discovery rule applies to an action for replevin under N.J.S.A. 2A:14-1. Brownstein's cause of action accrued when he first knew, or reasonably should have known through the exercise of due diligence, of the cause of action.  See *O'Keeffe v. Snyder*, 83 N.J. 478, 493, 416 A.2d 862, 870 (1980)

15.  **MISCELLANEOUS** (Set forth any matters which require action or should be brought to the attention of the Court.)

16.  **JURY TRIALS:**

Not Later Than:  ___DATE TO BE SET___

A.   Each party shall submit to the District Judge and to opposing counsel a Trial Brief or memorandum in accordance with General Rule 27, with citations to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B.   Counsel for each party shall each submit to the Judge with a copy to opposing counsel, written request for instructions to the jury. Supplemental requests for instructions may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same. In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

C.   If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

D.   Counsel shall submit to the Judge, with a copy to opposing counsel, their propose voir dire, if any.

17.   **NON JURY TRIALS**
[Not applicable]

18.   **TRIAL COUNSEL** (List the names of trial counsel for all parties).

Jay R. McDaniel, Esq. for Plaintiff
Jesse C. Klaproth Esq. for Defendants.

19.   **BIFURCATION:** (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages issues will be tried).

The issue of liability and damages SHALL be tried separately.

20.   **ESTIMATED LENGTH OF TRIAL:**

Three days

AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY, FROM TIME TO TIME, SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL

s/ Jay R. McDaniel
Attorney For Plaintiff

- 36 -

s/Jesse C. Klaproth
Attorney For Defendants

DATED _January 25, 2012_

UNITED STATES MAGISTRATE JUDGE