IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER BROWNSTEIN. <br><br> Plaintiff, <br><br> v. <br><br> TINA LINDSAY and ETHNIC TECHNOLOGIES, LLC <br><br> Defendants. | **Civil Action No. 3:10-CV-01581** |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**KLAPROTH LAW PLLC**

Jesse C. Klaproth (ID 035312006)
1500 Walnut Street, Suite 800
Philadelphia, PA 19102
jklaproth@klaprothlaw.com
215.644.7463

**LACKENBACH SIEGEL LLP**

Robert B. Golden (*pro hac vice*)
One Chase Road
Scarsdale, New York 10583
rgolden@LSLLP.com
914.723.4394

*Attorneys for Defendants/Counterclaimants*

Defendants Tina Lindsay ("Lindsay") and Ethnic Technologies, LLC ("ET") (collectively "Defendants") respectfully submit this Statement of Facts Not in Dispute, pursuant to Local Rule of Civil Procedure 56.1(a) and in accordance with this Court's August 6, 2018 Order (ECF No. 89), in support of their Motion Dismiss (ECF No. 183) that has been converted to a Motion for Summary Judgment.

## FACTS

1. In 1993, after researching origins of first and last names for almost two years at home evenings and weekends, Lindsay developed a system of rules for categorizing and predicting the ethnicity of names. This system was the Ethnic Determinant System ("EDS"). The EDS was a system that existed "independent of any computer language or any computer." (Lindsay Trial Tr. 254:11-12; 256:1-11, attached as Exhibit 1.)[1] (Lindsay Trial Tr. 265:3-18.) Or, as Plaintiff put it in his own words, "the intelligence resides in the data rather than the old fashioned [sic] approach of putting the rules in a computer program." (Brownstein 1997 Affidavit at ¶9, attached as Exhibit 2.)

2. Lindsay and Plaintiff worked together at a company called Future Prospective Clients, Inc., which would later be renamed List Services Direct, Inc. (collectively referred to as "LSDI"). Lindsay told Plaintiff about the EDS she was researching and developing in December 1993. (Brownstein 1997 Affidavit at ¶9.)

3. At the time Lindsay told Plaintiff about the EDS, Lindsay had already produced the EDS in a tangible, handwritten form of expression. (Lindsay Trial. Tr. 256:25-257:2; 266:16-23.) Sometime in 1994, Lindsay decided to tell the principal of LSDI, Tom Raskin,

---

[1] All exhibits are attached to the Klaproth Declaration filed herewith. The 2010 Settlement Agreement and State Court Transcript previously submitted in connection with Defendants' Motion to Dismiss have been resubmitted and renumbered here for the Court's convenience.

1

about the EDS. (Brownstein 1997 Affidavit at ¶11). Raskin agreed to let Lindsay install her system onto an "editor" (essentially a word processor) at LSDI.

    4.    Lindsay typed her handwritten system into the editor. (Brownstein Trial. Tr. 99:1-22, attached as Exhibit 3; Brownstein 1997 Affidavit at ¶15.) Raskin also agreed that LSDI would develop a computer program to run the EDS. (*Id*. at ¶¶11-12). The EDS combined with the LSDI programs was called the ***Lindsay*** Cultural Identification Determinant or "LCID". (*See* Brownstein Trial Tr. 196:2-12, attached as Exhibit 3.)

    5.    Plaintiff was employed as a computer programmer at LSDI and he was tasked with translating the EDS into computer code for LSDI. (Brownstein Affidavit at ¶¶11-14; Letter from LSDI with Plaintiff's Redacted W2 forms, attached as Exhibit 4.)

    6.    There is no dispute that Lindsay is the sole owner of the EDS and that she alone has the exclusive right to create derivative works of the EDS. *Brownstein v. Lindsay*, 742 F.3d 55, 59 (3d Cir. 2014) ("*Brownstein*").

    7.    There is also no dispute that the LCID and EDS are "distinct works with distinct copyrights." *Id*. at 66.

    8.    LSDI was marketing the LCID as its product to LSDI's own clients. (*See* LSDI Marketing Brochure, attached as Exhibit 5.) An LSDI form licensing agreement shows how LSDI was referring to and trying to license the LCID in May 1997. (*See* LSDI Licensing Agreement, attached as Exhibit 6.)

    9.    In November 1995, Plaintiff overheard Raskin referring to the EDS (now coupled with the derivati*ve* programs) as "Loretta's System." (Brownstein Affidavit at ¶22.) Plaintiff corrected Raskin and told him that it was "Tina's ethnic system." (*Id*. at ¶20.) Lin*dsa*y recognized that LSDI would claim that the EDS was owned by LSDI, so she took steps to protect

her work and filed two applications to register the copyright in her EDS in February and December 1996, respectively. (Copyright Registrations attached collectively as Exhibit 16.)

10. Around that time, Lindsay and Plaintiff began discussing the formation of a separate company to utilize and profit from the EDS, as well as other list industry initiatives, and they formed TAP Systems, Inc. ("TAP") in June 1996. (Brownstein 1997 Affidavit at ¶28.)

11. They were equal partners in TAP but continued to work at LSDI. Lindsay licensed the LCID to TAP, so TAP could license it to customers. (*See* TAP License, attached as Exhibit 7.)

12. Lindsay left LSDI in June 1997. About a month later, LSDI learned that Lindsay registered her copyright in the EDS and had given TAP a license to the LCID.

13. As a result, LSDI sued Plaintiff, Lindsay, and TAP over Lindsay's copyrighted work, claiming that it was created as a work for hire. (*See* LSDI Amended Complaint, attached as Exhibit 8.)

14. The LSDI lawsuit settled and, as a result, Lindsay retained sole ownership over the EDS, but Lindsay and Plaintiff gave up any interest in the programs that Plaintiff had created while employed at LSDI, including any derivative works based upon those programs:

> 9. Lindsay, ET, TAP, CMR, Nelson and Brownstein disclaim any ownership to the LSDI Program and any aspect thereto, any modifications and derivative work thereof,

(1998 Settlement Agreement at ¶9, attached as Exhibit 9.)

15. Following the 1998 LSDI settlement agreement, the EDS could no longer utilize the programs created by Plaintiff at LSDI, so the "LCID" as originally constituted no longer existed.

16. In addition to being an owner of TAP, Plaintiff was also an employee, working as

a computer programmer for TAP.

[Image of two check register entries: Check 1181 dated Jan. 31, 2002 to Peter Braunstein for $10,000.00, for payroll, this check $3,181.87; Check 1184 dated March 4, 2002 to Peter Braunstein, for Payroll, this check $2,982.12.]

(*See* TAP Check Register, attached as Exhibit 10.) In his capacity as programmer, Plaintiff translated the EDS into COBOL programs to license. This became known as the TAP System.

17.     Turning back to September 1997, while the LSDI litigation was ongoing, TAP combined its assets (consisting of a new derivative of the EDS called the TAP System) with CMR's "Name System" and formed a new company, which would later come to be known as Ethnic Technologies, LLC or "ET". (*See* 1997 Agreement, attached as Exhibit 11.)

18.     In December 2000, TAP and CMR revised their agreement and again noted that the two companies have combined TAP's assets (the TAP System) with CMR's assets to form ET. (*See* 2000 Agreement, attached as Exhibit 12.) The TAP System combined with CMR's Name System was called "E-Tech" and was the product that ET licensed to other businesses, although none of the original COBOL language programs remain in use today.

19.     After the 2000 Agreement, ET continued to license E-Tech to other companies, with Plaintiff signing at least five such licensing agreements between 2000 and 2005. (*See* License Agreements attached collectively as Exhibit 13.)

20.     On May 6, 2009, Plaintiff filed a derivative lawsuit on behalf of ET and himself against the then-Managers and Chief Executive Officer of ET. That lawsuit was settled on May

25, 2010, and pursuant to that settlement, Plaintiff sold his entire interest in TAP (and thus ET) for $1.9 million, based on the expected future cash flows from the software. (*See* Settlement Agreement attached as Exhibit 14.)

### The Third Circuit's Parameters[2]

21. The first trial resulted in a directed verdict in favor of Defendants, which resulted in an appeal to the Third Circuit.

22. On appeal, the Third Circuit unambiguously held that:

   a. Lindsay is the sole author of the rules known as the Ethnic Determinant System ("EDS"). *Brownstein* at 59.

   b. Brownstein is the sole author of the programs known as the ETHN programs. *Id*.

   c. The LCID and the EDS "are distinct works with distinct copyrights." *Id.* at 66.

   d. Brownstein retained rights only to those "subsequent generations of ETHN programs that Brownstein developed after the 1998 Settlement Agreement." *Id*.

   e. The 1998 LSDI Settlement Agreement abrogated [Brownstein's] ownership of the pre-1998 generations of the ETHN programs." *Id.* at 69.

   f. "Brownstein retains an interest in the post-1997 versions of the LCID insofar as they are based on any version of the LCID to which he is co-author." *Id*. at 67.

23. There is no genuine dispute that Lindsay is the sole author of the EDS, and that she alone can license the EDS and create derivatives therefrom. This is undisputed because the Third Circuit found that Lindsay "was [and is] the sole author of the EDS." *Brownstein* at 59. The Third Circuit noted that the EDS rules "could be written out in text, just as one might write out a recipe or driving directions." *Brownstein* at 59.

24. Moreover, the copyright registration of the EDS (the "127 Registration") lists

---

[2] While citations to the *Brownstein* decision are not facts per se, the decision crafted the parameters of Plaintiff's claim, such that the factual allegations must be viewed in context of the decision.

Lindsay as the sole author and claimant and the Third Circuit found no errors with the registration, providing *prima facie* evidence of the validity of the EDS and of Lindsay's ownership of the copyright. *See* 17 U.S.C. §410(c).

25. Thus, Plaintiff's claim, as crafted by the Third Circuit, hinges on his ability to show that "his"[3] computer code continued to be utilized and/or licensed by Lindsay after May 2010. This is because Plaintiff's cause of action is based on Lindsay granting and profiting from non-exclusive licenses in a work jointly owned by Plaintiff and Lindsay. A co-owner must account for the other's "fair share of profits from any non-exclusive license." *Brownstein at* 68.

26. Since, Plaintiff and Lindsay split the profits of TAP equally – until May 25, 2010 – Plaintiff's claim can only be for his fair share of the profits from any non-exclusive licenses given by Lindsay *after* that time.

27. Plaintiff's claim is further narrowed to proving that he has not been paid and that Lindsay profited (in a manner Plaintiff did not) from non-exclusive licenses containing Plaintiff's original computer code (post-1998), as his computer code was relinquished in the LSDI Settlement Agreement, as acknowledged by the Third Circuit. (*See* Brownstein at 69; see also 1998 Settlement Agreement at ¶9, attached as Exhibit 9.)

### Plaintiff's Claim in the Third Amended Complaint

28. Plaintiff's original complaint was filed on March 22, 2010 and was the operative complaint at the time of the May 25, 2010 settlement agreement. At the time of the first trial, the First Amended Complaint ("FAC") was the operative complaint in this case. *See* ECF No. 51. In the FAC, Plaintiff sought a "declaratory judgment that plaintiff Peter Brownstein is the co-author

---

[3] Plaintiff has yet to identify the code he purportedly created after 1998, that is capable of being independently copyrightable, and which has been utilized and licensed by Lindsay for profit. Indeed, even after discovery, a trial, an appeal, and now on remand, Plaintiff has not identified any code that this Court or Defendants could analyze to see whether Plaintiff has a viable claim.

6

of a joint work for which defendant Tina Lindsay registered two copyrights in 1996." FAC at ¶1.

29. On remand, the allegations in the FAC were no longer germane as the Third Circuit made clear that Lindsay, not Plaintiff, owns the EDS. Since Plaintiff was seeking a declaration of joint authorship in the EDS and the 1996 copyrights in the FAC, the Court allowed him to file an amended pleading consistent with the factual record and the decision in *Brownstein*.

30. The Third Circuit gave Plaintiff and this Court a very clear roadmap: "[i]t is possible that the post-1997 versions of the LCID continued to employ the code created by Brownstein, but such determination would require additional factual development at trial." *Brownstein* at 67.

31. With that roadmap, Plaintiff filed a Third Amended Complaint ("TAC") on March 27, 2018 (ECF No. 182).

32. The TAC, however, did not follow the guidance provided by the Third Circuit by alleging that Plaintiff's post-1998 computer code was licensed by Lindsay after May 25, 2010. Indeed, Plaintiff alleged the exact opposite: "***in mid-2010, ET Phased out the versions of the E-Tech created for use on mainframes, which incorporated the original computer programming of the LCID.***" TAC at ¶26.

33. The TAC does not allege, identify or attach any computer code that Plaintiff claims to own that is being licensed by Lindsay. If Lindsay is not licensing a product employing Plaintiff's work (code), then there is no viable claim for co-authorship.

34. The TAC also provides no factual allegations to support a claim against ET for a declaration of co-authorship – the only claim that remains. *See* ECF No. 189. Nor could Plaintiff make such an allegation, as his claim for co-authorship and an accounting for his purported fair

share of the profits lies solely against Lindsay and not ET.

35. Plaintiff's own counsel has admitted before the Presiding Judge of the Chancery Division in Bergen County Superior Court just that on April 22, 2016 in open court that Plaintiff has no claim against ET for joint authorship:

> THE COURT: You're not going to get a recovery against Ethnic Technologies?
>
> MR. McDANIEL: I don't see how?
>
> THE COURT: Why -- they're a defendant in the case.

> MR. McDANIEL: They were -- they were named as a defendant initially. The case was somewhat different when it was filed. And there was an issue with some other registrations, and it's been up to the Third Circuit, and the Third Circuit's kind of defined it.

*See* April 22, 2016 Transcript at 19:5-15, attached as Exhibit 15.

36. For good measure, Plaintiff's counsel repeated:

> THE COURT: Me, my comment was simply I don't know in terms of the relief you're seeking. What is -- you get a default judgment in the Federal case, what's the relief you get?
>
> MR. McDANIEL: I get an order that Tina Lindsay has to pay me half of everything that she's received.

*Id.* at 20:19-25.

37. And:

> THE COURT: So your waiving any right to collect anything against Ethnic Technologies, LLC in the Federal action?
>
> MR. McDANIEL: Ethnic could be on the hook for attorneys fees, and I mean, and honestly --

*Id.* at 21:7-11.

38. Finally:

> MR. McDANIEL: I mean I would waive, you know, and I'll be -- well, I'm not here to try, I'm very straightforward on these things. The -- the attorneys fees in the only thing that there's a potential claim for.

*Id.* at 24:19-23.

9

Dated: August 24, 2018                                         Respectfully submitted,

**KLAPROTH LAW PLLC**

*/s/* Jesse Klaproth
Jesse C. Klaproth (ID 035312006)
1500 Walnut Street, Suite 800
Philadelphia, PA 19102
jklaproth@klaprothlaw.com
215.644.7463

**LACKENBACH SIEGEL LLP**

Robert B. Golden (*pro hac vice*)
One Chase Road
Scarsdale, New York 10583
rgolden@LSLLP.com
914.723.4394

*Attorneys for Defendants/Counterclaimants*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 24, 2018, I served a true and correct copy of the foregoing document to all counsel of record by electronic court filing.

                                                 */s/* Jesse Klaproth
                                                 Jesse C. Klaproth