**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____
                                :
PETER BROWNSTEIN,               :
                                :
        Plaintiff,    :   Civ. Action No.: 10-1581(FLW)
                                :
v.                              :        **OPINION**
                                :
TINA LINDSAY, *et al.*,         :
                                :
        Defendants.   :
_____:

**<u>WOLFSON, District Judge</u>:**

In this protracted litigation, Plaintiff Peter
Brownstein ("Plaintiff" or "Brownstein") brought this case
under the Copyright Act seeking a declaratory judgment of
joint authorship of an ethnic identification system that he
purportedly created with defendant Tina Lindsay ("Lindsay").[1]
A trial was held in this case; however, before a verdict was
reached by the jury, Judge Pisano, *inter alia*, granted
judgment as a matter of law on the joint authorship claim in
favor of Lindsay and co-defendant Ethnic Technologies, LLC

---

[1]  This matter was initially assigned to the now-retired
Hon. Joel A. Pisano, U.S.D.J.  The case was transferred to
this Court after the Third Circuit reversed Judge Pisano's
trial decision granting judgment as a matter of law.

1

(collectively, "Defendants").[2]  On appeal, the Third Circuit reversed that decision in *Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014).  After remand, I directed Plaintiff to amend his complaint consistent with the undisputed facts that were determined during the first trial, which were recounted by the circuit court in its published decision. Upon amendment, Defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), which motion this Court converted to summary judgment.  Subsequently, the parties filed supplemental submissions.  For the reasons set forth herein, Defendants' motion for summary judgment is **GRANTED**.

## BACKGROUND and PROCEDURAL HISTORY

### I.    The Ethnic Determinant System Copyright

At the outset, I note that the following facts are undisputed unless otherwise noted, and to understand the complexity of this case, I start from the filing of the Complaint in 2010.[3]  In March 2010, Brownstein brought this

---

[2]    While other substantive decisions were made, the only relevant one to this Opinion is Judge Pisano's Rule 50(a) decision.

[3]    Since the parties are well acquainted with the facts after years of litigation, I need not cite to the record with regards to the undisputed historical facts of this case. Importantly, these facts are also well documented in various decisions, including the Third Circuit's opinion in *Brownstein*.  Furthermore, I note that Plaintiff takes issue with certain factual findings made during the first trial and in subsequent decisions, including *Brownstein*, and argues

2

suit seeking a declaratory judgment that he is a co-author of a joint work for which Lindsay registered a copyright in 1996. This copyright, also known as the Ethnic Determinant System ("EDS"), developed rules for computer programs to predict and categorize people's names by ethnicity.

At the time the EDS was conceived, Brownstein and Lindsay worked together at Future Prospective Clients, a direct mailing list company, that later changed its name to List Services Direct, Inc. ("LSDI"). Because of their working relationship, in January 1994, Lindsay enlisted Brownstein's expertise to turn her rules into computer codes. Brownstein, for his part, created a number of computer programs, which were known as the ETHN programs, that, *inter alia*, converted lists of names into data format and turned EDS rules into code. The combined product of the EDS and the ETHN programs was named the Lindsay Cultural Identification Determinant ("LCID"). In that regard, as the Third Circuit has recognized, "Lindsay was the sole author of the EDS, as an independent work of the LCID, Brownstein was the sole author

---

that this Court should not adopt those facts; however, Plaintiff cannot now re-litigate issues that have already been decided. Rather, I am bound by those determinations. *See Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.").

of the ETHN programs, as another independent work of the LCID, and they both had an equal authorship interest in the LCID as a joint work of the EDS and ETHN programs." *Brownstein*, 742 F.3d at 59.

In June 1996, Lindsay and Brownstein founded TAP Systems, Inc. ("TAP") to commercialize the LCID. In that regard, the LCID was licensed to TAP, and in turn, the company licensed the program to its customers. Each of them owned TAP equally. However, despite operating TAP, Lindsay and Brownstein continued to work at LSDI. Earlier that year, in February 1996, Lindsay, alone, received her first copyright registration for the EDS (the "872 registration"). In December 1996, Lindsay also obtained a second copyright registration for an updated version the EDS (the "127 registration"), which was the derivative work of the first version. With that registration, Lindsay included a copy of Brownstein's ETHN programs and referenced a computer process and codes associated with the copyright.

In late 1996, Lindsay and LSDI disputed the ownership of the EDS copyrights. LSDI demanded that both the EDS and the LCID were owned by the company since Lindsay and Brownstein created those works while working at LSDI. Because Lindsay vehemently disagreed, tension between LSDI management and the partners intensified to a point where both Lindsay

and Brownstein resigned from LSDI in June 1997. Thereafter, LSDI brought a lawsuit against, *inter alia*, Lindsay, Brownstein and Tap over Lindsay's copyrighted works, claiming that they were created as works for hire. The suit eventually settled in September 1998 (the "1998 LSDI Settlement Agreement"). Significantly, the terms of that settlement agreement substantially impacted the rights of the parties in this case vis-à-vis the EDS copyrights, particularly Brownstein. The pertinent portions of the 1998 LSDI Settlement Agreement are set forth as follows:

1. The parties acknowledge and agree that LSDI is presently using a computer program concerning ethnic selections (hereinafter called the "LSDI Program"). Lindsay, Nelson, Brownstein, TAP, CMR[4] and ET agree not to claim ownership or any of the rights to the LSDI program, any aspect thereto, nor to any modifications, nor any derivative work thereof, and agree not to make any claim that the LSDI Program or any aspect thereto, any modifications or derivative work thereof violates any of their rights, whether involving, but not limited to copyright, trademark, trade secret, proprietary property, or infringement of any of the foregoing, and agree to release LSDI and Raskin[5] from any such claims that may exist, except as otherwise provided herein. Lindsay, Nelson, Brownstein, TAP, CMR and ET acknowledge that Raskin and/or LSDI are/is the sole owners(s) of the LSDI Program.

---

[4]     Consumer Marketing Research, Inc., also known as CMR, was one of Lindsay's former employers. Ginger Nelson was one of CMR's executives. I will further explain these parties, *infra*.

[5]     Tom Raskin was an executive at LSDI.

2. The parties acknowledge and agree that all parties have made claim to the right to exclusive ownership of EDS, a work entitled "An Ethnic Determinant System –Knowledge and Rule/Exception Basis" (hereinafter called "EDS"), any therefore, and derivative work thereof.  As part of this settlement, LSDI and Raskin disclaim any ownership to EDS and any derivative work thereof, except as otherwise provided herein.

3. The parties acknowledge and agree that Tina Lindsay obtained a Certificate of Registration . . . for EDS which may be called LCID.

\* \* \*

9.    Lindsay, ET, TAP, CMR, Nelson and Brownstein disclaim any ownership to  the LSDI Program and any   aspect   thereto,   any modifications   and derivative   work   thereof, provided   any   such derivative work is independently developed by LSDI or Raskin, or is obtained  with the permission of the other parties to  this  settlement Agreement who have the ownership of such derivative work of EDS, subject to the agreement that none of  the parties to  this Settlement Agreement  is under  any  obligation  to provide  LSDI  with  anything further  than  that which LSDI has  in  its  possession  as  of  the date hereof.

10.    LSDI and Raskin relinquish and disclaim any ownership claims to those items set forth in paragraphs 2,3,4,5, and 6 above,  and any aspect thereof, any modification and derivative work thereof, except as provided for herein.

\* \* \*

13.    Lindsay, TAP Nelson, Brownstein, CMR and ET relinquish any claims  they  have  against  LSDI  or Raskin regarding  the  use  of  the LSDI  Program, EDS and E-Tech to the extent  presently  in  the possession  of  LSDI  or  Raskin,  and  subject  to the  provisions  of paragraph  19  or  any  program used  or  owned  by  any  of  them, including those items set forth in paragraphs 2, 3, 4, 5, or 6 or any aspect   thereof,   any  modification   or  derivative work  thereof  or  any aspect  thereto  by  LSDI  and/or

6

Raskin, unless in violation of this settlement agreement.

14.   LSDI and Raskin relinquish any claims they have against Lindsay, ET, TAP, CMR, Nelson and Brownstein regarding the use of EDS or any program used or owned by LSDI or Raskin or any derivative work thereof or any aspect thereof by Lindsay, ET, TAP, CMR, Nelson and Brownstein unless in violation of this Agreement.

LSDI Settlement Agreement, pp. 1-4. Essentially, based on these provisions, Lindsay retained sole ownership of the EDS, but Lindsay and Brownstein both relinquished any interest in the programs that the pair had created while employed at LSDI, including any derivative works based upon those programs.  In other words, pursuant to the terms of the settlement, Brownstein and Lindsay could no longer utilize the version of the LCID program developed by them while employed at LSDI.

## II.  Lindsay and Brownstein's Business Ventures

Around the same time Lindsay and Brownstein left their employment at LSDI, Lindsay began to pursue new business ventures to promote the LCID.  In late 1997, TAP partnered with CMR to create a new business venture.  In that connection, prior to the LSDI settlement, the parties entered into a licensing agreement in September 1997, wherein TAP and CMR agreed to combine CMR's then-technology with the LCID, later referred to as "E-Tech."  The new business entity formed by the combination of CMR and TAP was known as Ethnic Technologies, LLC ("ET"), a named defendant in this case.

Thereafter, ET began licensing E-Tech to other businesses. In December 2000, after the LSDI settlement, TAP and CMR revised their agreement and again set forth the fact that the two companies have combined TAP's assets with CMR's assets to form ET. After the signing of this agreement, ET continued to license E-Tech to other companies, with Plaintiff signing certain licensing agreements between 2000-2005.

## III. The Lawsuits

The business relationship between Lindsay and Brownstein deteriorated some time after their joint business ventures. As a result, Brownstein left ET in May 2009, and filed an oppressed shareholder lawsuit in New Jersey state court against Lindsay and ET. This litigation was settled in May 2010. Pursuant to the 2010 agreement, 1) the terms of that settlement would not affect Brownstein's right to pursue the current lawsuit, which was pending; 2) Brownstein agreed to relinquish his interests in ET, and 3) released the defendants (Lindsay and ET) and Brownstein from related claims. Specifically, Brownstein agreed to relinquish his right, title, and interest as a "shareholder, officer, employee or director in TAP or as manager, partner, member, officer, director or employee of E-Tech." 2010 Settlement Agreement, ¶ 2.6. During this period, Brownstein filed for

his own copyright registrations in December 2009, which purportedly covered his ETHN programs.

In March 2010, 14 years after the date of Lindsay's copyright registrations, Brownstein filed the present lawsuit seeking to protect his joint authorship of the LCID. In his First Amended Complaint, the operative version that proceeded to trial, Plaintiff states that "this is an action brought under the federal copyright law seeking a declaratory judgment that plaintiff Peter Brownstein is the co-author of a joint work for which defendant Tina Lindsay registered two copyrights in 1996 and that he is entitled to continue receiving a reasonable royalty for the exploitation of the joint work." First Am. Compl., ¶1. In other words, the gist of this case — prior to trial — centered on Plaintiff's claim that he should be declared a joint author of Lindsay's 1996 copyrights associated with the EDS.[6]

The case proceeded to a jury trial before Judge Pisano. However, at the end of Plaintiff's case, and prior to the defense case, Defendants moved for judgment as a matter of law pursuant to Rule 50, which was granted. Specifically,

---

[6]    Plaintiff also asserted three separate counts, i.e., constructive trust, resulting trust and replevin, that were dismissed at trial by Judge Pisano. Those counts are not at issue here.

Judge Pisano rejected the claim that Brownstein was a joint author of the EDS based on statute of limitations grounds. In that regard, it was found that because Brownstein had adequate notice of his authorship claim more than three years prior to filing his complaint, under the Copyright Act, he was timed barred from bringing suit.[7] Plaintiff appealed.

## IV. The Third Circuit's decision in *Brownstein*

Regarding the joint authorship claim, the Third Circuit addressed two factual questions: 1) whether Brownstein is a co-author of the LCID; and 2) whether his claim is barred by the statute of limitations. With respect to the first question, the circuit court, relying on a concession made at oral argument by defense counsel, found that Brownstein and Lindsay were co-authors of the LCID *up until* its 1997 iteration.[8] The Third Circuit reasoned:

---

[7] Judge Pisano also granted judgment in favor of Defendants on their counterclaim, which claim sought to cancel Brownstein's copyright registered in 2009. The Third Circuit reversed, reasoning that courts have "no authority to cancel copyright registrations because there is no statutory indication whatsoever that courts have such authority." *Brownstein*, 742 F.3d at 75. The cancellation issue is not relevant here.

[8] After remand, the parties, and this Court, questioned the legitimacy of this particular concession by counsel. Indeed, Defendants maintained that the circuit court did not — and cannot — make factual findings in the context of an appeal proceeding. Notwithstanding the plausibility of such an argument, I need not address this issue, because this

This concession means that Appellees admit that Brownstein contributed a non-trivial amount of creative expression to the LCID through his work on the ETHN programs and that Lindsay intended for the EDS to be combined with the computer code he drafted to form the LCID. Moreover, this framework concedes that the EDS and the ETHN programs are interdependent works, which comports with Lindsay's assertions. In both the 1997 Software License and her testimony at trial, she admitted that her rules and Brownstein's code were inseparable. (App. 1050 (Trial Tr. 256:1 ("[The] LCID had to have programs.")).) In Schedule A of the license, she wrote that the "series of computer programs" and "system data" of the LCID were "irrevocably entwined". (App. 668 (Software License Agreement, Schedule A).)

*Brownstein*, 742 F.3d at 65.

The Third Circuit went on to find that, as a matter of law, because the EDS and the LCID are distinct works with distinct copyrights, Lindsay's copyright registrations in 1996 did not cover the LCID or Brownstein's own work in the ETHN programs. The court rejected the argument that by submitting Brownstein's code in the form of a deposit copy with her copyright application did not mean that Lindsay could unilaterally claim rights to the ETHN programs or the LCID. Indeed, the court found that "Brownstein [] remain[ed] a co-author and co-owner [of the LCID] because copyright registration does not establish the copyright . . . . Consequently, Lindsay's copyright registrations, if anything,

---

factual determination is ultimately immaterial to the resolution of the disputes raised on this motion.

are merely placeholders for the indivisible joint rights she inherently had in the EDS and the LCID with Brownstein." *Id.* at 67.

Following that discussion, the Third Circuit made certain legal conclusions regarding Brownstein's own work and contribution to the LCID that are critical to the motion here:

> Brownstein had copyrights exclusively in his ETHN programs as an independent work and non-exclusively in the LCID as a co-author. In addition, he also had copyrights to whatever new generations of the ETHN programs and LCID that he created as "derivative works" of his first set of ETHN programs and the LCID. Therefore, although LSDI retained rights to the ETHN programs that were considered the "LSDI Program" in the 1998 Settlement Agreement, the subsequent generations of ETHN programs that Brownstein developed [would remain] under his ownership because they were derivative works of the LSDI Program. Brownstein's 2009 copyright registrations would, therefore, cover any post-1998 generations of the ETHN programs that were not covered by the 1998 Settlement Agreement with LSDI.

*Id.* Importantly, the court left open the very factual question dispositive on this motion: to what extent did the 1998 LSDI Settlement Agreement abrogate Brownstein's ownership of the pre-1998 generations of the LCID. More importantly, the court further noted that while it is possible that the later versions of the LCID continued to employ the code created by Brownstein, it is incumbent upon him to make that evidentiary showing. *Id.*

After finding that Plaintiff is a co-author of the LCID, the court discussed the issue of statute of limitations. Although this part of the Third Circuit's analysis is of little relevance here, I will nevertheless summarize it. Judge Pisano found that the operative statute of limitations started to run when Lindsay registered her copyrights in 1996, which also served as constructive notice to Plaintiff. Judge Pisano also found that Brownstein not only had Lindsay's copyright registrations in his possession but that he also had "actual knowledge" through the series of licensing agreements signed by Plaintiff, all of which showed that Lindsay was holding herself out as the sole author of the LCID. The circuit court disagreed. First, the court held that a copyright registration, standing alone, does not serve as repudiation of joint authorship. *Id.* at 71. Second, the court determined a jury question remains as to whether any of the agreements signed by Plaintiff, *e.g.*, the 1997 Software License, the 1997 Agreement the 2000 Agreement, the 2010 state court settlement agreement and ET's licensing agreements between 2000-2005, served as an express repudiation of Brownstein's authorship by Lindsay.[9] *Id.* at 75.

---

[9] After the filing of the Third Amended Complaint, in lieu of an answer, Defendants moved to dismiss Plaintiff's declaratory judgment claim on the merits. They did not, however, move on statute of limitations grounds.

## V.  The Third Amended Complaint

Following remand, Plaintiff's Complaint, as it was pled, was no longer viable because Plaintiff's claim sought a declaration of joint authorship over the 1996 copyrighted works registered by Lindsay.  *See* Am. Compl., ¶¶ 1, 29.  Based on the *Brownstein* decision, the Third Circuit found that the 1996 registered works, i.e., EDS, belonged to Lindsay.  Thus, the remaining question is whether any derivatives of the LCID, which is the joint work of Brownstein and Lindsay, continued to being utilized by ET without compensating Plaintiff.  That is the theory of the case Plaintiff was permitted to amend. In his Third Amended Complaint, which is the operative Complaint on this motion, Plaintiff changed course.  In the newly amended declaratory judgment claim, Plaintiff alleges that the "LCID/TAP System was a joint work, incorporating the encoding rules and codes authored by Lindsay and the programs written by Brownstein.  Brownstein and Lindsay are the co-authors of the copyrighted work as provided for by the Copyright Act, 17 U.S.C. § 101, *et seq."*  Third Am. Compl., ¶ 17.  Brownstein alleges that Lindsay and ET have expressly repudiated Brownstein's joint authorship of the copyrights in the LCID/TAP System and its derivatives and have failed to account . . . to Brownstein for the profits derived from the

joint work in direct conflict with ownership rights."[10]  *Id.*
at ¶ 19.

After Brownstein filed his Third Amended Complaint,
rather than answering, Defendants moved for dismissal under
Rule 12(b)(6).  Because the facts are largely undisputed
following remand, I converted the motion to a summary judgment
motion and requested the parties to submit any additional
briefing or evidence.  Having considered supplemental
submissions, I conclude that Plaintiff has failed to prove
that he is a joint author of the LCID/TAP System following
the 1998 LSDI Settlement Agreement.  Below is my reasoning.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a); *see also Garges v. People's Light & Theatre
Co.*, 529 F. App'x 156, 160 (3d Cir. 2013), judgment entered,
No. 13-1160, 2013 WL 3455818 (3d Cir. June 28, 2013) ("Summary
judgment is proper where there is no genuine issue of material
fact to be resolved and the moving party is entitled to

---

[10]    While Plaintiff also included a new copyright
infringement claim, he voluntarily withdrew that claim on
this motion, and in an Order dated August 6, 2018, I dismissed
that claim.

judgment as a matter of law" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).  If a fact is capable of affecting the substantive outcome of the litigation, it is "material."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" (internal citations omitted)); *Anderson*, 477 U.S. at 248.  In deciding a motion for summary judgment, a court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion.  *Garges*, 529 F. App'x at 160.  The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp.*, 477 U.S. at 322–23.

"Once the moving party has properly supported its motion for summary judgment, the nonmoving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" *Garges*, 529 F. App'x at 160 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). Indeed, the party opposing the motion may not rest on mere allegations or denials in his

pleading, *see id.* at 160; rather, the nonmoving party must present actual evidence that creates a genuine issue as to a material fact for trial, *Anderson*, 477 U.S. at 248–49; *see also* Fed. R. Civ. P. 56(c)(1)(A) (explaining that in order for the party opposing summary judgment to show "that a fact cannot be or is genuinely disputed," he must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support his factual position). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). After discovery, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since

a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting <u>Celotex</u>, 477 U.S. at 322–23; *see also Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) ("The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue" (citing *Anderson*, 477 U.S. at 249)). Importantly, in circumstances where the nonmoving party is pro se, such as here, "the court has an obligation to construe the complaint liberally." *Giles*, 571 F.3d at 322 (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)).

## II. Joint Authorship

To better understand Plaintiff's newly minted theory of joint authorship, I turn first to his Complaint. According to Plaintiff, the LCID, the joint work of Lindsay and Brownstein, was licensed to ET, the company formed by TAP and CMR, through various cooperative agreements with CMR. A derivative work, E-Tech, was formed by combining CMR's technology and the LCID. Plaintiff maintains that he is the co-owner of E-Tech because it is a derivative of the LCID.

Indeed, Plaintiff acknowledges that since the formation of TAP in 1996 until 2010, when he sold his shares in TAP and resigned as a manager of ET pursuant to the terms of the settlement in the oppressed shareholder lawsuit, he and Lindsay shared equally in the profits generated through TAP, which were derived by the licensing of E-Tech. Third Am. Compl., ¶ 22. Plaintiff claims that since his departure in 2010, ET has continued to create derivative works from E-Tech for which he did not receive profits; moreover, Plaintiff asserts that Lindsay has failed and refused to account to Brownstein as the co-author of the LCID/TAP System. Essentially, Plaintiff's case boils down to his position that as a co-author of the LCID since 1996, Brownstein is entitled to profits of any derivative works that were created from the LCID during the period of 2010 to the present. I am not persuaded by Plaintiff's simplistic view of the facts, particularly since he has not carried his burden of proving that he is a co-author of the later version of the LCID that was licensed to TAP or ET *after* the 1998 LSDI Settlement Agreement.

In *Brownstein*, the Third Circuit expounded that "[f]or two or more people to become co-authors, each author must contribute some non-trivial amount of creative, original, or intellectual expression to the work and both must intend that

their contributions be combined." *Brownstein*, 742 F.3d at 64
(citing Melville B. Nimmer & David Nimmer*, Nimmer on Copyright*
§ 6.07 and *Gaiman v. McFarlane*, 360 F.3d 644, 658-59 (7th
Cir. 2004)).  Indeed, as the circuit court put it, "[t]he
components must also be 'inseparable or interdependent' parts
of a whole but each co-author's contribution need not be equal
for them to have an equal stake in the work as a whole." *Id.*
at 65 (citing 17 U.S.C. § 101 and *Nimmer on Copyright* § 6.03).
In that regard, when two or more people create a "joint work",
they become co-authors and co-owners of that work, "each
entitled to undivided ownership in the entire work." *Id.* at
64 (citations and quotations omitted).  Notably, the Third
Circuit, for the first time in *Brownstein*, explained that
this type of ownership interest "vests from the act of
creating the work, rather than from any sort of agreement
between the authors or any act of registration with the
Copyright Office." *Id.*

Here, in his opposition, citing to the Copyright Act,
Plaintiff argues that he has no obligation to prove that his
code survives to this day; rather, according to Plaintiff, so
long as E-Tech is derived from the joint work of Brownstein
and Lindsay, Plaintiff is entitled to compensation.  In that
connection, Plaintiff claims that because the LCID is a joint
work, he has an undivided interest in the whole as joint

tenants for the duration of the copyrights. I disagree. In order for Brownstein to defeat summary judgment, he must present some evidence to show that he is a co-author of the version of the LCID that was licensed to ET to create derivative works. And, on that point, Brownstein has failed.

While it is undisputed that Brownstein is a co-author of the LCID, the important distinction that must be drawn — which was highlighted by the Third Circuit — is that Brownstein co-owned the LCID "up until its 1997 iteration," **before** he entered into a settlement agreement with LSDI. *Brownstein*, 745 F.3d at 65. This distinction has a significant legal implication on Brownstein's rights as co-owner of the LCID.

As I mentioned earlier in this Opinion, the lawsuit brought by LSDI was pending around the same time TAP entered into a Software License Agreement with CMR in September 1997. In that agreement, signed solely by Lindsay on behalf of TAP, TAP and CMR formed a new business, and both companies combined their licensed technology to create E-Tech.[11] *See* 1997 Software License Agreement, pp. 33-34. Prior to that agreement, in June 1997, Lindsay had independently licensed the LCID to TAP. *See* June 1997 Licensing Agreement, Schedule

---

[11] Although the combined system was not given the name E-Tech until December 2000, for the purposes of this Opinion, I will refer to the system as E-Tech for all relevant periods.

A.  As a result, the version of E-Tech in 1997 included the LCID, which was co-authored by Brownstein and Lindsay.

In 1998, however, the settlement with LSDI significantly changed Brownstein's ownership in the LCID.[12]  LSDI filed suit against the following parties: 1) Lindsay; 2) Brownstein; 3) TAP; 4) CMR; 5) ET; and 6) Nelson, an executive of CMR (collectively, "LSDI Defendants").  In that suit, LSDI alleged that Lindsay's copyrights, as well as the LCID, were owned by LSDI.  The parties eventually settled.  In the settlement agreement, the LSDI Defendants, which included Brownstein, agreed not to claim ownership or any of the rights to the LSDI program or any derivative work thereof. *See* 1998 LSDI Settlement Agreement, ¶ 1.  Importantly, the LSDI program refers to the version of LCID that Plaintiff had created during his employment with LSDI.  Indeed, that version of the LCID was the same one that Lindsay had licensed to TAP in

---

[12]  Plaintiff argues that Defendants do not have standing to use the 1998 LSDI Settlement Agreement as a defense on their motion.  Plaintiff reasons that because Defendants' arguments concerning the agreement are based on the rights of LSDI, they may not assert them here.  Plaintiff's argument is plainly without merit.  First, Defendants were signatories to the agreement, and as such, they may make arguments regarding how the agreement impacts this case.  More importantly, the examination of the agreement, here, focuses on what Brownstein had agreed to, in order to settle the LSDI lawsuit; these considerations have nothing to do with the rights of LSDI.  Accordingly, I reject Plaintiff's argument in this regard.

June 1997, which in turn was combined with CMR's technology to create E-Tech. Pursuant to the terms of the settlement, the LSDI Defendants agreed that LSDI would retain ownership of the 1998 version of LCID. However, Lindsay retained her sole ownership to the EDS copyrights. *See Id.* at ¶ 2. In sum, the settlement agreement deprived Brownstein of ownership in the pre-1998 version of the LCID. See *Brownstein*, 742 F.3d at 69 ("Brownstein's copyrights and ownership interest in his ETHN programs (and, by virtue thereof, the LCID) were not affected by the series of agreements, **except** to the extent that the 1998 LSDI Settlement Agreement abrogated his ownership of the pre-1998 generations of the ETHN programs, the 'LSDI Program.'" (emphasis added)).

Although ET continued to utilize Lindsay's EDS and/or later versions of the LCID after the 1998 LSDI settlement, *see* December 2000 Agreement, the remaining operative question is whether the later versions of the LCID, or any derivatives thereof, continued to use Plaintiff's computer code or ETHN programs without compensation flowing to Brownstein. *See Brownstein*, 742 F.3d at 67 ("[i]t is possible that the post-1997 versions of the LCID continued to employ the code created by Brownstein, but such determination would require additional factual development at trial.") In that regard, to survive summary judgment, Plaintiff must present some

evidence to show that E-Tech or the LCID, in their later versions, contained his work. Plaintiff has failed to so. After years of discovery, numerous rounds of motion practice, and a trial, Plaintiff still has not adduced any cogent evidence to establish that he is a co-author of any versions of the LCID, and in turn E-Tech, after the 1998 LSDI settlement.[13]

In order to excuse his shortcoming, Plaintiff argues that Defendants' argument related to the 1998 LSDI Settlement Agreement is contradicted by Lindsay's repeated reference to the content of the LCID as containing rules and programs. But, Lindsay's assertion in that regard referred to the earlier version of the LICD, prior to the 1998 LSDI Settlement Agreement. *See Brownstein*, 742 F3d at 65. Plaintiff further argues that Lindsay cannot seek to avoid the implications of the unresolved ownership of the LCID by arguing that the LCID that was licensed by her to TAP was different and better than

---

[13]    Grasping at straws, Plaintiff argues that Section 2 of the 1998 LSDI Settlement Agreement provides that LSDI disclaimed ownership of the "EDS and any derivative work thereof." Because the LCID is a derivative work of the EDS, Plaintiff contends that LSDI had disclaimed ownership of the LCID. Plaintiff's argument is belied by the very language of section 2. What Plaintiff fails to cite is the remaining language of section 2, which states "unless otherwise provided herein (the settlement agreement)." Indeed, the agreement recognizes that the LSDI Program, which refers to the 1997 version of the LCID, is a derivative work of the EDS, and that LSDI retained ownership of that program.

the LSDI Program referenced in the settlement agreement.  In
so arguing, however, Plaintiff improperly transfers his
burden of showing joint authorship to Defendants.  Put
differently, it is not Defendants' burden to demonstrate that
the version of the LCID licensed to TAP after the 1998 LSDI
Settlement Agreement did not contain Plaintiff's computer
codes; instead, Plaintiff must make an affirmative showing
that later versions of the LCID included his work, and he has
come up empty handed in that respect.

Next, Plaintiff, in a certification, states that he made
independent contributions to the LCID after leaving LSDI and
that he personally created a merged system comprised of the
LCID and CMRs name system.  More specifically, Plaintiff
certifies that he created certain programs that represent
updates and revisions that he performed to the LCID, and in
turn E-Tech, between July 1997 and November 1998.  He then
attaches voluminous copies of the programs printed in a word
processor format.  In fact, the majority of exhibits he
attached to his certification are computer codes and rules in
that context.  Having reviewed them, I do not find that
Plaintiff has raised any genuine issue of material fact.

First, to the extent Plaintiff's revisions and updates
to the LCID occurred prior to September 1998, Plaintiff does
not explain why those updates were not subject to the 1998

LSDI Settlement Agreement; after all, Plaintiff agreed to relinquish his rights to the LCID up until September 1998. Second, to the extent Plaintiff created new or derivative works from the LCID or the EDS after September 1998, the exhibits he attached to his certification, purportedly as evidence, are not self-evident. For instance, the word documents, which contain programs that Plaintiff proffers as purported revisions, are series of computer codes that this Court has no expertise to translate. Plaintiff does not have an expert to explain those codes or compare them to earlier versions of the LCID, and Plaintiff, himself, has not done so in his certification, except for self-serving, conclusory statements insufficient to defeat summary judgment. *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018)("conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment"); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009). Without an explanation or a proper comparison, the Court has no basis to find that Plaintiff somehow created new derivative works that are separate and distinct from the pre-1998 version of the LCID that he relinquished to LSDI.[14]

---

[14] Finally, Plaintiff submits a recent copyright that registered a version of the LCID, and the copyright identifies Brownstein and Lindsay as co-authors. Without regard to the propriety of such copyright, the registration indicates that

Accordingly, Plaintiff's attempt to create issues of fact fails, and because Plaintiff cannot demonstrate, on this motion, that he is a co-author of a version of the LCID or E-Tech licensed by ET after September 1998, Defendants' motion for summary judgment is granted.

### CONCLUSION

Based on the foregoing reasons, Plaintiff has failed to raise any genuine issue of material fact to defeat summary judgment. Accordingly, Defendants' motion is granted.


DATED: November 28, 2018


/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J

---

the date of first publication of the LCID covered by the copyright was November 1, 1996. *See* Copyright Registration, TX 8-545-832. Thus, this registration still does not answer the relevant question here: whether Plaintiff's work contributed to post-1998 versions of the LCID or E-Tech.